United States Court of Appeals,

Eleventh Circuit.

No. 96-6456.

GOLDEN ROD FARMS, INC., Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

June 20, 1997.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV 93-L-1345-S), Seybourn H. Lynne, Judge.

Before EDMONDSON, Circuit Judge, and KRAVITCH and HENDERSON, Senior Circuit Judges.

KRAVITCH, Senior Circuit Judge:

This case requires us to determine, as an issue of first impression, whether a corporation can qualify as a "farm-related taxpayer" within the meaning of 26 U.S.C. § 464(f)(3)(B) (1988). We conclude that Congress intended "farm-related taxpayer" to include all taxpayers, whether corporations or individuals, who are engaged full-time in farming activities. We thus affirm the district court's order granting Golden Rod Farms, Inc. ("Golden Rod") summary judgment on its claim for a tax refund.

I.

Golden Rod is an Alabama corporation that, as its primary business, raises broiler chickens for resale. During its 1987 fiscal year, Golden Rod paid over $20 million for feed and feed ingredients. Although Golden Rod used only a portion of these farm supplies during that fiscal year, it deducted the entire $20 million from its 1987 taxes. In filing its 1988 taxes, Golden Rod again deducted the entire amount of its feed purchases for its 1988 fiscal year even though it used only a portion of these materials during that taxable year.

The Internal Revenue Service ("IRS") determined that 26 U.S.C. § 464 precluded Golden Rod from deducting the entire amount of money it spent on feed in the year it purchased the feed supplies because Golden Rod was not a "farm-related taxpayer" within the meaning of 26 U.S.C. § 464(f)(3)(B). The IRS assessed deficiencies against Golden Rod for the deductions it had claimed

for feed purchased, but not used, on its 1987 and 1988 tax returns. After paying the deficiencies and filing an administrative claim for a refund, Golden Rod filed this action to recover the amount of the additional taxes assessed by the IRS plus interest.

The district court determined that Golden Rod qualified as a "farm-related taxpayer" under § 464(f)(3)(B) and granted Golden Rod's motion for summary judgment. The government appeals the district court's interpretation of § 464(f)(3)(B). We review this legal question *de novo. See Royal Caribbean Cruises, Ltd. v. United States,* 108 F.3d 290, 292 (11th Cir.1997).

II.

Section 464 limits the deductions certain taxpayers can claim for the purchase of farm supplies. Section 464(a) prohibits any "farming syndicate" from taking deductions for the purchase of farm supplies that were not actually used or consumed during the taxable year. 26 U.S.C. § 464(a).[1] Section 464(f) extends the deduction limits of § 464(a) beyond farming syndicates, making them applicable to any taxpayer who: "(A) does not use an accrual method of accounting; (B) has excess prepaid farm supplies for the taxable year; and (C) is not a qualified farm-related taxpayer." 26 U.S.C. § 464(f)(2). The parties agree that § 464(a)'s deduction limits apply to Golden Rod unless it is a "qualified farm-related taxpayer." The parties further agree that if Golden Rod is a "farm-related taxpayer," it is a "qualified farm-related taxpayer" within the meaning of § 464(f)(3)(A). The sole issue on appeal is thus whether Golden Rod is a "farm-related taxpayer."

Section 464(f)(3)(B) defines "farm-related taxpayer" to mean any taxpayer:

> (i) whose principal residence (within the meaning of section 1034) is on a farm,
>
> (ii) who has a principal occupation of farming, or
>
> (iii) who is a member of the family (within the meaning of subsection (c)(2)(E)) of a taxpayer described in clause (i) or (ii).

Golden Rod concedes that, as a corporation, it does not have a principal residence and is not a

---

[1]The statute defines "farming syndicate" as any partnership or any other enterprise (other than a corporation which is not an S corporation) engaged in the trade or business of farming if: (1) interests in such entity have been offered for sale in any offering required to be registered with Federal or State authorities; or (2) if more than 35 percent of the losses during any period are allocable to limited partners or limited entrepreneurs. 26 U.S.C. § 464(c)(1).

member of a family. Golden Rod maintains, however, that it is a "taxpayer ... who has a principal occupation of farming." In determining whether a corporation can qualify as a "taxpayer ... who has a principal occupation of farming," we begin with the language of the statute.

The government contends that the ordinary, everyday understanding of "occupation" indicates that only individuals can qualify as "farm-related taxpayers." *See, e.g., Webster's Third New International Dictionary* 1560 (1986) (defining "occupation" as the "principal business of one's life"). According to the government, corporations engage in a "trade or business" and cannot have an "occupation." If Congress had wanted to include corporations, the government argues, it would have referred to a "principal trade or business of farming." *See, e.g.,* 26 U.S.C. § 447(a)(1) (referring to "a corporation engaged in the trade or business of farming").[2] Moreover, the government argues that the structure of § 464(f)(3)(B) confirms that Congress intended this limited understanding of occupation in § 464(f)(3)(B) because it used other terms in that section—"residence" and "family"—that plainly apply only to individuals.

Golden Rod asserts that Congress's use of "taxpayer" indicates that Congress intended a corporation to be eligible to qualify as a "farm-related taxpayer" because the statutory definition of "taxpayer" includes corporations as well as individuals. 26 U.S.C. § 7701(a)(1, 14). Had Congress intended § 464(f)(3)(B) to apply only to individuals, Golden Rod contends that it would have used "individual" instead of "taxpayer" as it did in § 464(c)(2)(A)-(E) (referring to "individual" rather than "taxpayer" in defining farm syndicate). Golden Rod argues that reading "occupation" to apply only to individuals would frustrate Congress's intent by ignoring its choice to use "taxpayer." *See* 26 U.S.C. § 7701(a) (terms such as "taxpayer" should be given their defined meaning unless "otherwise distinctly expressed or manifestly incompatible with the intent thereof").

In addition, Golden Rod argues that "occupation" commonly is used to refer to corporations

---

[2]The government also refers to several other provisions of the United States Code, including provisions of the Internal Revenue Code, to argue that when Congress uses the term "occupation," it means to refer only to individuals. *See, e.g.,* 26 U.S.C. § 3121(b)(21) (referring to "principal occupation of employee"); 20 U.S.C. § 2361 (referring to programs that prepare youth and adults for "occupation of homemaking"). Although these provisions indicate that Congress often uses "occupation" to refer to the job of an individual, they do not, in our view, establish that "occupation" can never refer to the activities of a corporation.

as well as individuals. In its view, "business" and "occupation" are synonyms that apply equally to individuals and corporations. *See, e.g.,* "Farmer's Tax Guide," IRS Publication No. 225, at 24 (using "principal business" rather than "principal occupation" to explain § 464(f)(3)(B)).

After considering both parties' contentions and carefully examining the language of § 464, we conclude that the statutory phrase at issue is ambiguous and does not plainly exclude corporations. Although we agree with the government that "occupation" is most commonly used to refer to the job of an individual, we cannot conclude that Congress's use of the term necessarily was meant to exclude corporations from the reach of § 464(f)(3)(B). We first note that courts and legislatures have used the term "occupation" to refer to the activity of a corporation. *See, e.g., South Covington & Cincinnati Street Railway Co. v. City of Covington,* 235 U.S. 537, 544, 35 S.Ct. 158, 160, 59 L.Ed. 350 (1915) (referring to the "principal occupation" of a corporation); Cal.Lab.Code § 1700.4(a) (West 1996) (defining "talent agency" as "a person or *corporation who engages in the occupation* of procuring, offering, promising, or attempting to procure employment or engagements for an artist or artists.") (emphasis added). Moreover, we construe Congress's use of "taxpayer" instead of "individual" in § 464(f)(3)(B) to suggest that it did not intend to limit the application of this section to individuals. We therefore cannot conclude, based on the plain language of the statute, that Congress intended that only individuals be eligible to qualify as "farm-related taxpayers."

Because we find the language of the statute ambiguous, we turn to the legislative history of § 464 to discern Congress's intent. *See Estate of Wallace v. Commissioner,* 965 F.2d 1038, 1044 (11th Cir.1992) ("If a statute is in any way ambiguous, then the court must consider the statute's legislative history.") (quotation omitted). Congress enacted 26 U.S.C. § 464 as part of the Tax Reform Act of 1976 in order to preclude wealthy taxpayers seeking to defer tax on non-farm income from taking advantage of the special tax rules available to full-time farmers. *See Wallace,* 965 F.2d at 1040 (discussing legislative history).

By 1986, Congress had become dissatisfied with the limited reach of § 464. Despite the deduction limits placed on farming syndicates, many farming tax shelters continued to operate to defer taxation of non-farming income by prepaying farm expenses. S. Rep. 99-313, 99th Cong., 2d

Sess. 268 (1986); Staff of the Joint Comm. on Taxation, 100th Cong., 1st Sess., *General Explanation of the Tax Reform Act of 1986,* at 191 (Comm. Print 1987) (hereinafter "General Explanation").[3]  Because "[s]uch tax shelters distort the measurement of taxable incomes of their investors and affect farming operations that are not established for tax reasons," Congress added subsection (f) to place limits on "the deductibility of prepaid expenses of certain farming tax shelters which do not fall within the farm syndicate rules." S. Rep. 99-313, 99th Cong., 2d Sess. 268 (1986); *see also* General Explanation, *supra,* at 191.  Congress, however, was careful to create certain exceptions in order "to assure that farmers with continuous year-round or full-time farming activities are not subject to the limitations."  S. Rep. 99-313, 99th Cong., 2d Sess. 268 (1986); *see also* General Explanation, *supra,* at 191.

This legislative history convinces us that Congress intended the deduction limits imposed by § 464(f) to apply to taxpayers engaged in tax sheltering and that it did not intend these limits to reach taxpayers, whether individuals or corporations, who are engaged in full-time farming activities.  The legislative history nowhere differentiates between corporate and individual taxpayers engaged in full-time, year-round farming.  Golden Rod indisputably is engaged in full-time farming activities and is not engaged in the type of tax sheltering activities that Congress sought to eliminate with the enactment of § 464(f).  We therefore conclude that Golden Rod qualifies as a "farm-related taxpayer" within the meaning of § 464(f)(3)(B).

III.

Accordingly, we AFFIRM the district court's order granting Golden Rod's motion for summary judgment.

---

[3]Although the General Explanation, which is compiled after the enactment of the statute, does not provide contemporaneous legislative history, we have recognized that it provides "a valuable aid to understanding the statute." *Wallace,* 965 F.2d at 1050 n. 15.