115 T.C. No. 15

UNITED STATES TAX COURT

KATHRYN CHESHIRE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3483-99.                    Filed August 30, 2000.


        P and H filed a joint 1992 Federal income tax return
on which a portion of retirement distribution proceeds H
received and interest received from a joint bank account
were omitted from gross income.  Although P acknowledges
that when she signed the joint return she had actual
knowledge of the omitted retirement distribution
proceeds, she posits that, relying on H's false
statements, she had reason to believe that the omitted
retirement distribution proceeds were not taxable and
that she should be entitled to relief under sec. 6015(b),
(c), and/or (f), I.R.C., with respect thereto.  Further,
P seeks innocent spouse relief with respect to the sec.
6662(a), I.R.C., accuracy-related penalty.

        1.  <u>Held</u>: P is not entitled to innocent spouse
relief with respect to the omitted items of income.

2. _Held_, _further_, knowledge of the "item giving rise to a deficiency" for purposes of sec. 6015(c)(3)(C), I.R.C., does not mean knowledge of the tax consequences of the item or that the entry on the return is incorrect.

3. _Held_, _further_, after taking into account all the facts and circumstances presented in this case, R's denial of equitable relief to P under sec. 6015(f), I.R.C., as it relates to the sec. 6662(a), I.R.C., penalty applicable to the omitted retirement distribution proceeds, constitutes an abuse of his discretion.

John Edward Leeper, for petitioner.

Sheila R. Pattison and Gerald L. Brantley, for respondent.

JACOBS, _Judge_:  Respondent determined a $66,069 deficiency in Kathryn and David Cheshire's 1992 Federal income tax, a $16,518 section 6651(a)(1) addition to tax, and a $13,214 section 6662(a) accuracy-related penalty.  Only Kathryn Cheshire has contested this determination; she does so claiming innocent spouse relief under section 6015(b), (c), and/or (f).

After concessions by respondent, see _infra_, the issue to be resolved is whether Mrs. Cheshire is entitled to innocent spouse relief with respect to:  (1) The taxation of an omitted portion of the distributions Mr. Cheshire received upon his retirement from Southwestern Bell Telephone Co., and omitted interest income from a joint bank account, and (2) the section 6662(a) accuracy-related penalty.

All section references are to the Internal Revenue Code as in effect for the year under consideration. All Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Background

Petitioner resided in Cedar Creek, Texas, at the time she filed her petition.

Petitioner and Mr. Cheshire were married on June 20, 1970; they permanently separated on July 13, 1993, and were divorced on December 5, 1994. For 1992, petitioner and Mr. Cheshire (collectively, the Cheshires) filed a joint Federal income tax return.

Petitioner received a bachelor of science degree in secondary education. Upon graduating from college in 1970, she worked approximately 3 years as an elementary school teacher, then stayed home for approximately 10 years (1974-84) in order to raise her 2 children. She returned to teaching in 1984.

In September 1985, the Cheshires purchased property located at 24A Simpson Avenue, Cedar Creek, Texas, for use as the family

residence.   The Cheshires borrowed $99,000 to purchase the property.

David Cheshire's Retirement and Compensation Package

Mr. Cheshire took early retirement from Southwestern Bell Telephone Co. (Southwestern Bell), effective January 1, 1992.  As a result, Mr. Cheshire received the following distributions (the retirement distributions) in 1992:

|  | Amount |
|---|---|
| Nations Bank of Texas, Trustee, for "SBNCNPP EMP LUMP SUM" | $199,771 |
| Southwestern Bell LESOP for salaried employees | 5,919 |
| Southwestern Bell savings plan for salaried employees | 23,263 |
| Southwestern Bell ESOP | 971 |
| Total | 229,924 |

Of the $229,924, $42,183 was rolled over into a qualified account.

On January 31, 1992, Mr. Cheshire deposited $184,377 of the retirement distributions into an account (account No. 9633-09) in the name of "David D. Cheshire and Kathy Cheshire" at the Austin Telco Federal Credit Union (the Austin Telco account).[1]  In 1992, the funds in this account earned $1,168 in interest.

Petitioner was aware of Mr. Cheshire's receipt of the retirement distributions and the amount thereof, as well as the interest earned on the Austin Telco account.

---

[1]   An additional $29,786 was deposited into this account between Jan. 29 and Feb. 4, 1992.  The record does not reveal the source of these funds.

The Cheshires' Use of the Retirement Distributions

The Cheshires made several large disbursements out of the Austin Telco account in 1992. Specifically, $99,425 was withdrawn to pay off the mortgage on the family residence, and $20,189 was withdrawn to purchase a 1992 Ford Explorer.

The retirement distributions were also used to pay family expenses, provide startup capital for Mr. Cheshire's newly formed sole proprietorship, Academic Resources Management Systems (ARMS), and for investments.[2] In addition, the retirement distributions were used to satisfy loans taken out to acquire a family truck and a car for one of their children as well as to open a college bank account for their daughter. The Cheshires retained joint ownership of this account.

On September 22, 1992, Mr. Cheshire opened a second account (account No. 25239-87) at the Austin Telco Federal Credit Union and transferred the remaining proceeds of the retirement distributions from account No. 9633-09 into this account. On November 12, 1992, Mr. Cheshire wrote a check from this second account in the amount of $6,300 payable to "A.R.M.S."; this amount was subsequently deposited into ARMS' bank account. In 1992, the funds in account No. 25239-87 earned $26 in interest.

---

[2] On Apr. 24 and May 19, 1992, Mr. Cheshire deposited $40,000 and $5,301, respectively, into a brokerage account at Edward D. Jones & Co.

## Petitioner's Separation and Divorce

Mr. Cheshire was arrested several times for driving while intoxicated (DWI).  In June 1993, he was involved in an alcohol-related automobile accident.  Approximately a month later, petitioner and Mr. Cheshire permanently separated; they divorced 17 months after their separation.

Pursuant to a divorce decree, Mr. Cheshire transferred to petitioner his interest in the property constituting the family residence and title to the 1992 Ford Explorer.  At the time of transfer, the family residence and the Ford Explorer were unencumbered.

## The Cheshires' 1992 Federal Income Tax Return

Mr. Cheshire prepared and filed his and Mrs. Cheshire's joint income tax returns.  Mr. Cheshire prepared the Cheshires' 1992 joint Federal income tax return (the 1992 return) in March 1993, prior to beginning a jail sentence for a DWI conviction.  Before signing the return, petitioner questioned her husband about the potential tax ramifications of the retirement distributions.  Mr. Cheshire falsely told petitioner he had consulted with a local certified public accountant, J.D. Mican (Mr. Mican), and had been advised that proceeds used to pay off the mortgage on their home would reduce the taxable amount of the retirement distributions.  Accepting her husband's answer, petitioner did not inquire further and signed the 1992 return on March 14, 1993.  Petitioner assumed

that the 1992 return would be timely filed. On the 1992 return, the Cheshires reported that they had received a $199,771 retirement distribution and that $56,150 of that amount constituted taxable income. In addition, they reported $477 in interest income, as well as a $12,349 loss on their Schedule C, Profit or Loss From Business.

In August 1994, petitioner received a letter from the Internal Revenue Service (IRS) stating that it had not received the Cheshires' 1992 return. In searching for a copy of the 1992 return, petitioner discovered in a desk drawer the original 1992 return as well as a check for the amount of tax shown to be owing ($23.86). Petitioner immediately contacted Mr. Mican; he advised her to file the 1992 return and enclose payment for the tax liability reflected on the return as soon as possible. Petitioner filed the 1992 return along with the remittance on August 15, 1994.

In early October 1994, petitioner received notification from the IRS that $8,502 in estimated tax payments claimed on the Cheshires' 1992 return had not been paid. Despite Mr. Cheshire's reassurance that he had made the estimated tax payments, petitioner discovered that the payments in fact had not been made. Upon the advice of Mr. Mican, petitioner paid the estimated tax using borrowed funds.

Notice of Deficiency

Respondent determined that $187,741 of the retirement distributions ($229,924 total distributions less the $42,183 rollover) constituted taxable income, and thus the Cheshires understated the taxable amount of the retirement distributions by $131,591 ($187,741 - $56,150). Respondent further determined that the Cheshires understated (1) their interest income by $717, (2) their dividend income and capital gains by $132 and $1,889, respectively, and (3) their self-employment tax by $353. In addition, respondent disallowed $14,843 in Schedule C expenses. As a result of these determinations, as well as the late filing of the 1992 return, respondent determined that a section 6651(a)(1) addition to tax and a section 6662(a) accuracy-related penalty should be imposed.

Respondent's Concessions

Prior to trial, respondent conceded that petitioner qualified for innocent spouse relief with respect to the following:

| Item | Amount |
| --- | --- |
| Schedule C expenses | $14,843 |
| Self-employment taxes | 353 |
| Capital gains | 1,889 |
| Dividend income | 132 |
| Interest income | 26 |
| Southwestern Bell LESOP distribution | 5,919 |
| Southwestern Bell savings plan distribution | 23,263 |
| Southwestern Bell ESOP distribution | 971 |
| Section 6651(a)(1) addition to tax | 16,518 |

OPINION

As a general proposition, if a joint return is filed by a husband and wife, liability with respect to any tax shown on the return or found to be owing is joint and several. See sec. 6013(d)(3). In 1971, Congress enacted section 6013(e), the predecessor to section 6015, in order to correct perceived grave injustices often resulting from the imposition of joint and several liability. See S. Rept. 91-1537, at 2 (1970), 1971-1 C.B. 606, 607; see also Act of Jan. 12, 1971, Pub. L. 91-679, sec. 1, 84 Stat. 2063 (enacted sec. 6013(e)), as amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424, 98 Stat. 494, 801-803.

As amended,[3] section 6013(e) provided that a spouse could be relieved of tax liability if the spouse proved: (1) A joint income tax return was filed; (2) the return contained a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) in signing the return, the spouse seeking relief did not know, and had no reason to know, of the substantial understatement; and (4) under the circumstances it would be inequitable to hold the spouse seeking relief liable for the

---

[3] Initially, sec. 6013(e) provided relief only in cases involving an omission of income. In 1984, the scope of sec. 6013(e) was expanded to provide relief in erroneous deduction cases. See Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424, 98 Stat. 494, 801-803; H. Conf. Rept. 98-861, at 1119 (1984), 1984-3 C.B. (Vol. 2) 1, 373.

substantial understatement.   The relief granted under section 6013(e) is commonly referred to as innocent spouse relief.

The Enactment of Section 6015

For many taxpayers, relief under section 6013(e) was difficult to obtain.   In order to make innocent spouse relief more accessible, Congress repealed section 6013(e) and enacted a new innocent spouse provision (section 6015) in 1998 as part of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201(a), 112 Stat. 734.  See H. Conf. Rept. 105-599, at 249 (1998). The newly enacted statute provided three avenues of relief from joint and several liability:  (1) Section 6015(b)(1) (which is similar to former section 6013(e)) allows a spouse to escape completely joint and several liability; (2) section 6015(b)(2) and (c) allow a spouse to elect limited liability through relief from a portion of the understatement or deficiency; and (3) section 6015(f) confers upon the Secretary discretion to grant equitable relief in situations where relief is unavailable under section 6015(b) or (c).  Section 6015 generally applies to any liability for tax arising after July 22, 1998, and any liability for tax arising on or before July 22, 1998, that remains unpaid as of such date.  See H. Conf. Rept. 105-599, at 251 (1998).

Applicable Statutory Provisions

Section 6015(b) provides:

SEC. 6015(b).  Procedures for Relief From Liability Applicable to All Joint Filers.--

(1)  In general.--Under procedures prescribed by the Secretary, if--

(A)  a joint return has been made for a taxable year;

(B)  on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;

(C)  the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D)  taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E)  the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,

then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

(2) Apportionment of relief.--If an individual who, but for paragraph (1)(C), would be relieved of liability under paragraph

(1), establishes that in signing the return such individual did not know, and had no reason to know, the extent of such understatement, then such individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to the portion of such understatement of which such individual did not know and had no reason to know.

Section 6015(c) provides in relevant part:

SEC. 6015(c). Procedures to Limit Liability For Taxpayers No Longer Married or Taxpayers Legally Separated or Not Living Together.--

(1) In general.--Except as provided in this subsection, if an individual who has made a joint return for any taxable year elects the application of this subsection, the individual's liability for any deficiency which is assessed with respect to the return shall not exceed the portion of such deficiency properly allocable to the individual under subsection (d).

*     *     *     *     *     *     *

(3)(C) Election not valid with respect to certain deficiencies.--If the Secretary demonstrates that an individual making an election under this subsection had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual under subsection (d), such election shall not apply to such deficiency (or

portion).  This subparagraph shall not apply where the individual with actual knowledge establishes that such individual signed the return under duress.

Section 6015(d) specifies how an allocation under section 6015(c) is to be made, providing in relevant part:

SEC. 6015(d).  Allocation of Deficiency.--For purposes of [section 6015(c)]--

(1) In general.--The portion of any deficiency on a joint return allocated to an individual shall be the amount which bears the same ratio to such deficiency as the net amount of items taken into account in computing the deficiency and allocable to the individual * * * bears to the net amount of all items taken into account in computing the deficiency.

*    *    *    *    *    *    *

(3) Allocation Of Items Giving Rise To The Deficiency.--For purpose of * * * [section 6015(c)]--

(A)  In general.--Except as provided in paragraphs (4) and (5), any item giving rise to a deficiency on a joint return shall be allocated to individuals filing the return in the same manner as it would have been allocated if the individuals had filed separate returns for the taxable year.

(B) Exception where other spouse benefits.--Under rules prescribed by the Secretary, an item otherwise allocable to an individual under subparagraph (A) shall be allocated to the other individual

filing the joint return to the extent the item gave rise to a tax benefit on the joint return to the other individual.

(C) Exception for fraud.--The Secretary may provide for an allocation of any item in a manner not prescribed by subparagraph (A) if the Secretary establishes that such allocation is appropriate due to fraud of one or both individuals.

The electing spouse has the burden of proof with respect to establishing the portion of any deficiency allocable to such individual. See sec. 6015(c)(2). As with section 6015(b), an election for section 6015(c) relief must be made within 2 years from the date the Secretary begins collection activities with respect to the individual making the election. See sec. 6015(c)(3)(B).

Section 6015(f) provides:

SEC. 6015(f). Equitable Relief.--Under procedures prescribed by the Secretary, if--

(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

Availability of Relief to Petitioner

For the reasons that follow, we conclude that petitioner is not entitled to innocent spouse relief except to the extent provided below.

A.  Relief Under Section 6015(b)

Neither party disputes that in this case the requirements of subparagraphs (A), (B), and (E) of section 6015(b)(1) have been satisfied.[4]  Their dispute involves whether the requirements of subparagraphs (C) and (D) of section 6015(b)(1) have been met.

Section 6015(b)(1)(C) contains a no "knowledge of the understatement" requirement.  Petitioner maintains that the standard of inquiry to be used in determining whether the putative innocent spouse knew, or had reason to know of, an understatement of tax is whether, at the time the return was signed, a reasonably prudent taxpayer in the spouse's position could be expected to know that the stated tax liability was erroneous or that further investigation was warranted.  Based on this standard, petitioner posits that even though she knew of the retirement distributions and the interest income, she did not know that there was an understatement of tax on the 1992 return.

---

[4]  Respondent has not objected to the manner in which petitioner has raised a claim for innocent spouse relief under sec. 6015.  We thus treat the raising of innocent spouse relief in the petition as a timely filed election.  See Butler v. Commissioner, 114 T.C. 276, 281-282 (2000); Charlton v. Commissioner, 114 T.C. 333, 339 (2000).

We do not agree with petitioner's standard of inquiry. The no knowledge of the understatement requirement of section 6015(b)(1)(C) is similar to that found in former section 6013(e)(1)(C). Where relief was requested under section 6013(e) with respect to the omission of income (the situation involved herein), both this Court and the Court of Appeals for the Fifth Circuit, the court to which an appeal in this case would lie, have concluded that where a spouse seeking relief has actual knowledge of the underlying transaction that produced the omitted income, innocent spouse relief is denied. See Reser v. Commissioner, 112 F.3d 1258, 1265 (5th Cir. 1997), affg. in part and revg. in part T.C. Memo. 1995-572; Bokum v. Commissioner, 94 T.C. 126, 148 (1990), affd. 992 F.2d 1132 (11th Cir. 1993). We believe this standard applies for section 6015(b)(1) relief as well.

Here, petitioner possessed actual knowledge of the underlying transactions (the distribution of retirement proceeds and the interest earned on the Austin Telco account) that gave rise to the Cheshires' understatement of tax. Petitioner had been informed by Mr. Cheshire that he was contemplating retirement and was eligible to receive a substantial sum of money from his retirement plan. By the end of January 1992, petitioner was aware of both the retirement distribution proceeds and the existence of the Austin Telco account. In fact, Mr. Cheshire showed petitioner the deposit

slip and discussed with her the purposes for which the retirement distribution proceeds would be used.

Petitioner also had actual knowledge that interest was earned on the Austin Telco account. At all times, petitioner was aware of the balance in this account and frequently wrote checks drawn on its funds. Moreover, bank statements and a Form 1099, Interest Income, setting forth the amount of interest earned on the account were sent to petitioner's home. Thus, petitioner does not satisfy the no knowledge of the understatement requirement of section 6015(b)(1)(C). Moreover, because petitioner knew, or had reason to know, of the entire amount of the retirement distributions and the interest earned on the Austin Telco account, she is not entitled to proportionate relief under section 6015(b)(2).

B. Relief Under Section 6015(c)

In general, section 6015(c) allows proportionate tax relief (if a timely election is made) through allocation of the deficiency between individuals who filed a joint return and are no longer married, are legally separated, or do not reside together for a 12-month period. Such allocation, however, is not permitted if the Secretary demonstrates that the individual electing relief had actual knowledge, at the time the return was signed, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual. See sec. 6015(c)(3)(C). For purposes of section 6015(c), unlike for purposes of section 6015(b)

and (f), equitable considerations in holding the putative innocent spouse liable for unpaid tax or any deficiency are of no import.

In the instant case, neither party disputes that the principal item giving rise to the deficiency is Mr. Cheshire's receipt of the retirement distribution proceeds,[5] and that such item is allocable to him under section 6015(d). Nor is there any dispute that petitioner is entitled to make an election under section 6015(c) as she and Mr. Cheshire were no longer married when petitioner filed her petition in this Court. The dispute between the parties involves whether petitioner had actual knowledge, at the time the joint return was signed, of "any item giving rise to the deficiency (or portion thereof)".

Petitioner posits that because she did not know that the taxable amount of the retirement distribution was misstated on the 1992 joint return, she is entitled to section 6015(c) relief. Respondent, on the other hand, maintains that ignorance of the tax law is of no import--if petitioner knew of the event or transaction giving rise to the deficiency (which she admits she did), then petitioner cannot obtain relief under section 6015(c).

In our opinion, the knowledge requirement of section 6015(c)(3)(C) does not require the electing spouse to possess knowledge of the tax consequences arising from the item giving rise

---

[5]     Petitioner does not claim sec. 6015(c) relief with respect to the omitted interest income.

to the deficiency or that the item reported on the return is incorrect.  Rather, the statute mandates only a showing that the electing spouse actually knew of the item on the return that gave rise to the deficiency (or portion thereof).  See Wiksell v. Commissioner, 215 F.3d 1335 (9th Cir. 2000) ("the actual knowledge inquiry in section 6015(c)(3)(C) focuses on whether the taxpayer had knowledge 'of any item giving rise to a deficiency', not on the tax deficiency itself"; Court of Appeals held that spouse demonstrated actual knowledge of certain tax items by questioning her spouse about them), affg. without published opinion T.C. Memo. 1999-32.  Here, when petitioner signed the joint return, she was aware of the amount, the source, and the date of receipt of the retirement distribution and interest.  She was, however, under a misapprehension as to the taxable amount of the retirement distribution.

We believe the knowledge standard for purposes of section 6015(c)(3)(C) is an actual and clear awareness (as opposed to reason to know) of the existence of an item which gives rise to the deficiency (or portion thereof).  In the case of omitted income (such as the situation involved herein), the electing spouse must have an actual and clear awareness of the omitted income.[6]  Section 6015(c)(3)(C) does not require actual knowledge on the part

---

[6]    We leave to another day the manner in which the actual knowledge standard will be applied in erroneous deduction cases.

of the electing spouse as to whether the entry on the return is or is not correct.

We recognize that the Senate and conference reports contain the statement that "if the IRS proves that the electing spouse had actual knowledge that an item on a return is incorrect, the election will not apply to the extent any deficiency is attributable to such item." H. Conf. Rept. 105-599, at 253 (1998); see S. Rept. 105-174, at 70 (1998). Arguably, this statement conflicts with our knowledge standard for purposes of section 6015(c)(3)(C). On the other hand, it can be read merely as an example where relief is not warranted.

Section 6015(c)(3)(C) does not explicitly state or reasonably imply that relief is denied only where the electing spouse has actual knowledge that the item giving rise to the deficiency (or any portion thereof) is incorrectly reported on the return. As the Supreme Court has stated "courts must presume that a legislature says in a statute what it means and means in a statute what it says there". Connecticut Natl. Bank v. Germain, 503 U.S. 249, 253-254 (1992). Were we to interpret section 6015(c)(3)(C) narrowly (by denying relief only where the electing spouse actually knows that the item giving rise to the deficiency is incorrectly reported on the return), we would be redrafting the statute, something we may not do.

We now turn to the meaning of the word "item" for purposes of

section 6015(c)(3)(C).  Although the word "item" is not defined in section 6015(c)(3)(C), we believe that in omitted income situations "item" refers to the item of income that should have been reported on the return .  An example contained in the report issued by the Joint Committee on Taxation, accompanying RRA 1998, supports this interpretation:

> The rule that the election will not apply to the extent any deficiency is attributable to an item the electing spouse had actual knowledge of is expected to be applied by treating the item as fully allocable to both spouses.  For example, a divorced couple filed a joint return during their marriage with wage income of $150,000 allocable to the wife and $30,000 of self-employment income allocable to the husband.  On examination, an additional $20,000 of the husband's self-employment income is discovered, resulting in a deficiency of $9,000.  The IRS proves that the wife had actual knowledge of $5,000 of this additional self-employment income, but had no knowledge of the remaining $15,000.  In this case, the husband would be liable for the full amount of the deficiency, since the item giving rise to the deficiency is fully allocable to him.  In addition, the wife would be liable for the amount that would have been calculated as the deficiency based on the $5,000 of unreported income of which she had actual knowledge. Even if the wife elects to limit the liability for the deficiency under this provision, the IRS would be allowed to collect that amount from either spouse, while the remainder of the deficiency could be collected only from the husband. [Emphasis supplied.]

Staff of Joint Comm. on Taxation, General Explanation of Tax Legislation Enacted in 1998, at 70 (J. Comm. Print 1998).

The meaning we give to an "item" that gives rise to a deficiency, for purposes of the knowledge requirement found in section 6015(c)(3)(C), is consistent with that of other sections of the Code where the word "item" is used.  See, e.g., CIA v. Sims,

471 U.S. 159, 169 (1985) (Supreme Court looks to other statutes in defining "intelligence sources" and "confidential source[s]".)  For instance, the Code defines "item" in other contexts, as follows: Section 6231(a)(3) defines "partnership item" as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A"; section 6231(a)(5) defines "affected item" as "any item to the extent such item is affected by a partnership item"; and section 6245 defines a "subchapter S item" as "any item of an S corporation to the extent regulations prescribed by the Secretary provide that, for purposes of * * * [subtitle F of the Code (Procedure and Administration)], such item is more appropriately determined at the corporate level than at the shareholder level."  In these circumstances, "item" is defined without reference to its tax consequences.  Moreover, it is clear under section 61 that an "item" is gross income from a particular source, including pensions (the type of omitted income involved in this case).

Generally, ignorance of the tax law is not a defense to a deficiency.  As we have previously stated:

> We reject [the taxpayer's] assertion that she did not have "reason to know" * * * because of her insufficient legal acumen.  As a practical matter, this argument is tantamount to a claim that ignorance of the law is an element of the innocent spouse defense, and, as such, is incorrect. * * * A taxpayer is presumed to have knowledge of the tax consequences of a transaction, but is not presumed to have knowledge of the transaction itself.

Bokum v. Commissioner, 94 T.C. at 150 (quoting Stevens v. Commissioner, 872 F.2d 1499, 1508 n.8 (11th Cir. 1989), affg. T.C. Memo. 1988-63 (citations omitted)); Estate of Hall v. Commissioner, T.C. Memo. 1996-93, affd. 103 F.3d 112 (3d Cir. 1996). Were we to accept the knowledge standard petitioner advocates (i.e., the putative innocent spouse is entitled to relief if she/he misunderstood or lacked knowledge of the Internal Revenue Code (the Code)), then potentially any spouse who is not a certified public accountant or tax attorney would be allowed to escape paying income tax. We do not believe Congress intended such a result.

To conclude, petitioner had actual knowledge of the disputed item of income (the retirement distribution proceeds), as well as the amount thereof, that gave rise to the deficiency at the time she signed the joint 1992 return. The fact that petitioner did not know that the amount of the retirement distribution was misstated on the return is of no import. Consequently, the benefits of section 6015(c) are unavailable to her.

C. Relief Under Section 6015(f)

Section 6015(f) confers discretion on the Secretary (and the Secretary has delegated that discretion to respondent) to grant innocent spouse relief to an individual (where relief is not available under section 6015(b) or (c)) if taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or deficiency (or any portion

of either). In the instant case, petitioner sought but was denied relief under section 6015(f). Petitioner maintains that respondent's refusal to grant relief to her was arbitrary, capricious, and without sound basis in fact.

Respondent acknowledges that we have jurisdiction to review his denial of innocent spouse relief under section 6015(f). See Butler v. Commissioner, 114 T.C. 276 (2000); Fernandez v. Commissioner, 114 T.C. 324 (2000); Charlton v. Commissioner, 114 T.C. 333 (2000). We review respondent's denial of equitable relief to petitioner under an abuse of discretion standard. See Butler v. Commissioner, supra at 292; Mailman v. Commissioner, 91 T.C. 1079, 1083 (1988); Estate of Gardner v. Commissioner, 82 T.C. 989, 1000 (1984). This is a question of fact. See Hospital Corp. of Am. v. Commissioner, 81 T.C. 520, 594 (1983); Foster v. Commissioner, 80 T.C. 34, 160, 178 (1983), affd. in part and revd. in part on another ground 756 F.2d 1430 (9th Cir. 1985).

Petitioner's claim for innocent spouse relief was initiated in her petition to this Court. Prior to trial, respondent conceded that petitioner was entitled to relief with respect to certain items omitted from the 1992 joint return and was not liable for the section 6651(a)(1) addition to tax. Presumably before doing so, respondent followed standard procedures by reviewing his administrative files and considered petitioner's contentions.

Respondent opposes petitioner's claim for equitable relief

with respect to the retirement distribution proceeds, the interest income, and the section 6662(a) accuracy-related penalty on the grounds that it would not be inequitable to hold petitioner liable for the tax on these items and that she failed to demonstrate reasonable cause in omitting these items.  After taking into account the facts and circumstances presented in this case, we do not believe respondent abused his discretion in denying  equitable relief to petitioner with respect to the retirement distribution proceeds and interest income or with respect to the section 6662 penalty as it relates to the omitted interest income.  However, we believe respondent's denial of equitable relief to petitioner under section 6015(f) to be an abuse of his discretion as it relates to the section 6662(a) penalty applicable to the omitted retirement distribution proceeds.  The reasons for our overruling respondent's denial of relief regarding the section 6662(a) penalty applicable to the retirement distribution proceeds are as follows:

Section 6662(a) does not apply to "any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion."  Sec. 6664(c)(1).  After carefully observing petitioner while testifying, we are satisfied that at the time she signed the 1992 tax return, petitioner believed that the portion of retirement distribution proceeds used to pay off the mortgage on

the family residence would be nontaxable. Further, we believe petitioner acted in good faith in reaching this erroneous conclusion.

Petitioner trusted and relied upon Mr. Cheshire when it came to the preparation of their tax returns. She is an elementary school teacher, having taken no courses in accounting or tax return preparation. She asked Mr. Cheshire about the potential tax ramifications of the retirement distributions, and Mr. Cheshire assured petitioner that he had consulted with a certified public accountant and had been advised that the payment of the outstanding mortgage on the family residence and any amount rolled over into a qualified account reduced the taxable amount of the retirement distributions. Mrs. Cheshire had no reason to doubt the truthfulness of Mr. Cheshire's statement, and in fact believed him. Under these circumstances, we do not believe petitioner had an obligation to inquire further.

We conclude that petitioner would have been justified in believing that $58,163 ($199,771 - $42,183 (rollover) - $99,425 (mortgage repayment)) of the $199,771 retirement distributions was taxable. Indeed, $199,771 in retirement distributions was reported on the 1992 return, albeit only $56,150 was included in the calculation of income. (The record does not reveal the $2,013 difference between $58,163 and $56,150; we deem the $2,013 difference to be de minimis.) In our opinion, it is an abuse of

discretion to deny relief under section 6015(f) in an addition to tax or penalty situation when on an individual basis the putative innocent spouse meets the statutory standard generally applied to all taxpayers that shows the addition to tax or penalty is inapplicable.

Given the facts and circumstances in this case, to hold petitioner liable for the entire section 6662(a) penalty would be inequitable.  Consequently, we hold that respondent abused his discretion in failing to grant petitioner innocent spouse relief from the section 6662(a) penalty as it relates to the understatement regarding the omitted  retirement distribution proceeds.  However, we conclude that respondent did not abuse his discretion in failing to grant petitioner innocent spouse relief from the section 6662(a) penalty as it relates to the understatement regarding the omitted interest income.  Petitioner knew of that income, and the record is devoid of any reason for its omission.  Consistent with these conclusions, the parties should determine the exact amount of the section 6662(a) penalty due in their Rule 155 calculation.

To reflect the foregoing and respondent's concessions,

<u>Decision will be</u>

<u>entered under Rule 155</u>.

Reviewed by the Court.

WELLS, CHABOT, COHEN, RUWE, WHALEN, HALPERN, LARO, FOLEY, and VASQUEZ, <u>JJ</u>., agree with this majority opinion.

CHIECHI, <u>J</u>., concurs in the result only.

THORNTON, J., concurring: No relief is available under section 6015(c)(3)(C) if the Commissioner shows that the spouse seeking relief had "actual knowledge * * * of any item giving rise to a deficiency (or portion thereof)". Majority op. p. 17. The majority opinion appropriately construes this statutory language to require, in the case of omitted income, "actual and clear awareness of the omitted income." Thus, I believe, the majority opinion inherently rejects respondent's argument that actual knowledge of an "item" means actual knowledge merely of the event or transaction giving rise to the deficiency. This result comports with the ameliorative purposes of section 6015(c). It is also consistent with the statutory framework. In particular, if a spouse qualifies under section 6015(c), the relief provided under section 6015(d) is an allocation between spouses of the "items" giving rise to the deficiency. In this context, "item" clearly signifies the item of omitted income, not the underlying event or transaction.

The majority opinion harmonizes with the legislative history. The relevant Senate and conference reports state that section 6015(c) provides no relief if the Commissioner proves that the spouse seeking relief had "actual knowledge that an item on a return is incorrect." What does it mean for an "item on a return" (as opposed to the tax treatment of such an item) to be "incorrect"? In the context of omitted income, and in the light of the section 61 provisions defining gross income by reference to

various "items," it most likely means that gross income from a particular source, such as a pension, is incorrectly reported (either by virtue of understatement or omission) on the return. The other statements of legislative purpose cited by the dissent evince no clear consensus about any other standard of general applicability and dictate no contrary result.

Here the question is whether Mrs. Cheshire had actual knowledge of the gross income from the pension that gave rise to the deficiency. Clearly she did. Whether she believed the pension proceeds distribution was nontaxable in whole or part on the ground that it was used to pay down a mortgage or under some other mistaken theory is immaterial.

WHALEN, HALPERN, LARO, FOLEY, and VASQUEZ, JJ., agree with this concurring opinion.

PARR, J., dissenting: I have joined with Judge Colvin in his dissenting opinion, because I believe the language of section 6015(c)(3)(C) is ambiguous and that we should consult legislative history for guidance in resolving that ambiguity. I write separately only to express my concern about the Court's application of section 6013(e) case law to the case at hand.

Section 6015 is a remedial statute, therefore, its provisions should be construed and applied liberally in favor of those whom the statute was designed to benefit. Cf. Helvering v. Bliss, 293 U.S. 144, 150-151 (1934); Allen v. Commissioner, 514 F.2d 908, 915 (5th Cir. 1975). Moreover, it is apparent that Congress intended section 6015 to provide broader relief than that provided by section 6013(e).

In its discussion of section 6015(f), the majority has found-- and I agree--that, considering the facts and circumstances of this case, it is not inequitable to hold petitioner liable for the deficiency. Since equitable consideration is also a requirement for relief under section 6015(b)(1)(D), the majority's discussion of section 6015(b)(1)(C) is unnecessary. The word "understatement" used in section 6015(b)(1)(C) is different from the word "item" construed in the discussion of section 6015(c)(3)(C). Yet the

majority treats both as synonymous with "transaction".  I would defer this discussion to a case that required it.[1]

Accordingly, I respectfully dissent.

COLVIN and MARVEL, JJ., agree with this dissenting opinion.

---

[1]The facts of Charlton v. Commissioner, 114 T.C. 333 (2000), are distinguishable, and the discussion of sec. 6015(b) therein is thus not determinative.

COLVIN, J., dissenting: Section 6015(c)(3)(C) provides that the separate liability election is not available if the Commissioner proves that the putative innocent spouse "had actual knowledge * * * of any item giving rise to a deficiency". The majority holds that in omitted income cases:

> Section 6015(c)(3)(C) does not require actual knowledge on the part of the electing spouse as to whether the entry on the return is or is not correct. [Majority op. pp. 19-20.]

I respectfully dissent because the majority's construction of section 6015(c)(3)(C) squarely conflicts with the legislative history of section 6015(c). I also dissent because the majority fails to discuss Charlton v. Commissioner, 114 T.C. 333 (2000), and relies on Wiksell v. Commissioner, 215 F.3d 1335 (9th Cir. 2000) (unpublished), affg. T.C. Memo. 1999-32, which did not present the issue we face here.

I. The Phrase "Item Giving Rise to a Deficiency" Is Ambiguous

Section 6015(c)(3)(C) provides in pertinent part that:

> [i]f the Secretary demonstrates that an individual making an election under this subsection had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual under subsection (d), such election shall not apply to such deficiency (or portion). * * * [Emphasis added.]

Sec. 6015(c)(3)(C).

Thus, section 6015(c) relief is not available if the Commissioner proves that the putative innocent spouse had actual knowledge of any "item giving rise to a deficiency". That phrase

is ambiguous; the "item" of which the putative innocent spouse must have had actual knowledge could be either of two things. First, it might refer to a transaction or activity. If so, then, as respondent contends, see majority op. at 18, a putative innocent spouse would not qualify for the separate liability election under section 6015(c) if the Commissioner showed that he or she knew that an income-producing transaction or activity had occurred.

Alternatively, knowledge of an "item giving rise to a deficiency" might refer to knowledge that an entry on a tax return was incorrect. Under this interpretation, the putative innocent spouse would not be disqualified under section 6015(c) merely because he or she knew that the income-producing transaction or activity giving rise to the deficiency had occurred. Instead, the Commissioner would be required to show that the electing spouse had actual knowledge that the treatment of the item on the tax return was incorrect.[1]

---

[1] That "item giving rise to a deficiency" could be reasonably construed in either of these ways is demonstrated by the fact that the Internal Revenue Code uses the term "item" to refer both to an underlying activity and to the tax return treatment of an activity. As an example of the former, sec. 61(a) provides that–

SEC. 61(a). * * * Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, fringe benefits, and

(continued...)

## II. Statutory Context and Legislative History Make Section 6015(c) Clear

### A. Section 6015(c) Compared to Former Section 6013(e)(1)(C)

In an unreported income case, a taxpayer failed to qualify for innocent spouse relief under former section 6013(e)(1)(C) if the taxpayer had knowledge of the transaction which led to the understatement. See Reser v. Commissioner, 112 F.3d 1258, 1267 (5th Cir. 1997). The instant case is also an unreported income case, and respondent contends we should apply the same standard here. See majority op. at 18.

Congress enacted sweeping changes to the innocent spouse provisions in 1998. In addition to liberalizing section 6013(e)(1)(C) in new section 6015(b), Congress also provided two additional forms of innocent spouse relief: the separate liability election (section 6015(c)) and authority for the Secretary to grant relief on equitable grounds (section 6015(f)). Congress also enacted a different knowledge requirement in section 6015(c)(3)(C) than had applied in former section 6013(e)(1)(C). First, section

---

[1](...continued)
    similar items;

    (2) Gross income derived from business;

As an example of the latter, sec. 57(a) refers to various "items of tax preference", all of which are defined by reference to tax consequences. Thus, the phrase "item giving rise to a deficiency" in sec. 6015(c)(3)(C), actual knowledge of which causes a putative innocent spouse to fail to qualify under sec. 6015(c), is reasonably subject to more than one interpretation.

6015(c)(3)(C) places the burden of proof on the Commissioner; under former section 6013(e) it was on the taxpayer. Second, section 6015(c)(3)(C) requires that the putative innocent spouse's knowledge be actual; former section 6013(e)(1)(C) required only that the putative innocent spouse "know or have reason to know". Third, section 6015(c) requires that the putative innocent spouse had the requisite knowledge "at the time such individual signed the return"; former section 6013(e)(1)(C) required that he or she had the requisite knowledge "in signing the return". Fourth, section 6015(c) requires that the putative innocent spouse have the requisite knowledge of "any item giving rise to a deficiency"; former section 6013(e)(1)(C) required that the putative innocent spouse know "that there was such substantial understatement". These broad structural changes, and the specific changes to the knowledge requirement, dictate that we be cautious in applying interpretations of former section 6013(e)(1)(C) to section 6015(c).

B.   Legislative History

As stated, the knowledge requirement in section 6015(c) is reasonably subject to different interpretations. We may consider legislative history to resolve statutory ambiguity. See Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997); Golden Rod Farms, Inc. v. United States, 115 F.3d 897, 899 (11th Cir. 1997). We especially should respect legislative history where there is unequivocal evidence of legislative purpose. See Huntsberry v.

Commissioner, 83 T.C. 742, 747-748 (1984).

The separate liability election provisions originated in the Senate version of section 6015.[2] The legislative history consistently shows that Congress intended "actual knowledge" to be knowledge that the return is incorrect.

First, the Senate Committee on Finance report states that a putative innocent spouse will not qualify for relief under section 6015(c) if the Commissioner shows that he or she had actual knowledge that any item on the return was incorrect. The Senate Committee on Finance report provides that:

> if the IRS proves that the electing spouse had actual knowledge that an item on a return is incorrect, the election will not apply to the extent any deficiency is attributable to such item. [Emphasis added.]

S. Rept. 105-174, at 59 (1998).

Second, the Senate Committee on Finance report, in the "Reasons for Change" section, stated the following with respect to the separate liability election:

> The Committee intends that this election be available to limit the liability of spouses for tax attributable to items of which they had no knowledge. The Committee is concerned that taxpayers not be allowed to abuse these rules by knowingly signing false returns,

_____

[2] Under the Senate version of sec. 6015(c), the separate liability election was a complete substitute for innocent spouse relief under sec. 6013(e). Under the conference agreement and as enacted, sec. 6013(e) was repealed and reenacted in liberalized form as sec. 6015(b), and the separate liability election was provided as an alternative, available only to individuals no longer married, legally separated, or living apart for at least 12 months.

> or by transferring assets for the purpose of avoiding the payment of tax by the use of this election. The Committee believes that rules restricting the liability of taxpayers to limit their liability in such situations are appropriate. [Emphasis added.]

S. Rept. 105-174, at 55-56 (1998). Thus, the Senate Committee on Finance equated "actual knowledge" with "knowingly signing [a] false return".

Third, Senator Graham said the following in offering amendments to section 6015(c) (unanimously adopted by the Senate) on behalf of himself and other Senate Committee on Finance members:

> The primary exception [to allocable liability under section 6015(c)] was that if the Secretary of the Treasury could demonstrate--and the burden is on the Secretary of the Treasury to demonstrate--that an individual making this election to be taxed only for their proportional share of the deficiency of the return, that if they had actual knowledge of the conditions within that return which led to this deficiency, then they would be 100 percent responsible. [Senate Floor Debate for Amendment No. 2369, 144 Cong. Rec. 56, S4473; emphasis supplied]

Senator D'Amato, also a member of the Senate Committee on Finance, said:

> There were concerns, and rightly so, that some taxpayers may try to abuse the innocent spouse rules by knowingly signing false returns, or transferring assets for the purpose of avoiding the payment of tax, and then claim to be innocent. Obviously, no one would want to open the door to that type of fraud. As such, language was included in the bill that would prevent an individual from electing the innocent spouse provision if they had "actual knowledge of any item giving rise to a deficiency." [Emphasis added.]

Id.

Fourth, using language identical to that used by the Senate Committee on Finance, the conference report states that a putative

innocent spouse will not qualify for relief under section 6015(c) if he or she had actual knowledge that any item on the return was incorrect.  The conference report states that:

> if the IRS proves that <u>the electing spouse had actual knowledge that any item on a return is incorrect,</u> the election will not apply to the extent any deficiency is attributable to such item. [Emphasis added.]

H. Conf. Rept. 105-599, at 253 (1998).  Thus, the legislative history unequivocally shows that Congress intended to require the Commissioner to prove that the putative innocent spouse knew that his or her tax return was incorrect.[3]

The passage from the legislative history on which the majority relies relates to the allocation of items between the two spouses when one qualifies for the separate liability election.  See majority op. at 21.  It does not describe the knowledge requirement, interpretation of which is at issue here, and thus does not address this issue.  Further, statutory language in the allocation rule undermines the majority's position.  Section 6015(d)(3)(A) provides that:

> (A) In general.–Except as provided in paragraphs (4) and (5), <u>any item</u> giving rise to a deficiency on a joint return <u>shall be allocated</u> to individuals filing the

------

[3]  Contrary to the suggestion that this language might merely be an example of a situation where relief is not warranted, the above-quoted passage from the conference report and the identical language from the Finance Committee report are explanations of the statutory rule, not examples.  The Finance Committee report and the conference report have a specific way to present examples.  First, they state a general point; then they state "For example, * * *" to illustrate the point.  This pattern is repeated seven times in the Finance Committee's explanation of sec. 6015 and seven times in the conference report's explanation of sec. 6015.

> return in the same manner as it would have been allocated if the individuals had filed separate returns for the taxable year.  [Emphasis added.]

The text of section 6015(d)(3)(A) implies that an "item giving rise to a deficiency" is an item on the return rather than a underlying transaction or activity because an amount on a return can be allocated, i.e., split, but an underlying transaction or activity cannot.

Thus, the legislative history accompanying enactment of section 6015(c) clearly shows that Congress intended the knowledge requirement to mean knowledge that the return is incorrect, not knowledge that there was an income-producing activity or transaction.  See S. Rept. 105-174, at 59 (1998), H. Conf. Rept. 105-599, at 253 (1998).  The majority fails to apply that standard. See majority op. at 20.

The majority's reliance on the TEFRA partnership rules (sections 6231 and 6245) to construe "item" is not persuasive because those sections do not speak to the interpretative issue we face under section 6015(c)(3)(C).

III.  The Majority Disregards the Requirement in the Conference Report That the Commissioner Prove That the Putative Innocent Spouse Knew That an Item on the Return Was "Incorrect"

As stated above, the majority holds that, in omitted income cases, section 6015(c)(3)(C) does not require actual knowledge on the part of the electing spouse as to whether the entry on the return is or is not correct.  See majority op. at 20.[4]

---

[4]  The majority also suggests another standard; i.e., that
(continued...)

The majority concludes that petitioner inquired in good faith as to whether her return was correct, she was assured that it was correct, and she had no obligation to inquire further. See majority op. at 26. In explaining its holding that it was an abuse of discretion for respondent not to grant equitable relief under section 6015(f) as to petitioner's liability for the section 6662(a) accuracy-related penalty, the majority states:

> we are satisfied that at the time she signed the 1992 tax return, petitioner believed that the portion of retirement distribution proceeds used to pay off the mortgage on the family residence would be nontaxable. Further, we believe that petitioner acted in good faith in reaching this erroneous conclusion.

> * * * * * * *

> [Petitioner] asked Mr. Cheshire about the potential tax ramifications of the retirement distributions, and in response, Mr. Cheshire assured petitioner that he had consulted with a certified public accountant and had been advised that the payment of the outstanding mortgage on the family residence and any amount rolled over into a qualified account reduced the taxable amount of the retirement distributions. Mrs. Cheshire had no reason to doubt the truthfulness of Mr. Cheshire's statement, and in fact believed him. Under these circumstances, we do not believe petitioner had an obligation to inquire further.

Majority op. at 25-26. In short, the majority holds that petitioner thought the reporting of the distributions on her tax return was correct. Thus, in holding for respondent, the majority disregards

---

⁴(...continued)
"the electing spouse must have an actual and clear awareness of the omitted income." See majority op. p. 19. If sec. 6015(c)(3)(C) is unambiguous, we need not create another standard; if it is ambiguous, legislative history provides the standard; i.e., that relief is not available if the Commissioner proves that the electing spouse had actual knowledge that any item on a return is incorrect.

the requirement in the Senate Committee on Finance report and conference report that the putative innocent spouse know something was "incorrect".  See majority op. at 20.

### IV.  Wiksell v. Commissioner

The taxpayer in Wiksell v. Commissioner, 215 F.3d 1335 (9th Cir. 2000) (unpublished), affg. T.C. Memo. 1999-32, knew that checks she received from her husband's business had not been reported on their 1994 and 1995 tax returns.  See id. at 2000-1336, 88-983.  She also had actual knowledge that the return was incorrect.  See the findings of fact in Wiksell v. Commissioner, T.C. Memo. 1994-99.

The issue in Cheshire is whether knowledge of an "item giving rise to a deficiency" refers to the putative innocent spouse's knowledge of the underlying activity, or knowledge that the income, deduction, loss, or credit from the activity is incorrectly reported on the tax return.  The opinion of the U.S. Court of Appeals for the Ninth Circuit in Wiksell v. Commissioner, supra, does not discuss the "knowledge that any item on the return is incorrect" language from the legislative history.  The opinion of the Court of Appeals does not say the parties disputed, or that the Court of Appeals considered, whether the actual knowledge of "any item giving rise to a deficiency" required by section 6015(c) is knowledge of an income-producing transaction, or knowledge that it was reported incorrectly.  In fact, since Mrs. Wiksell knew her return was wrong, the Court of Appeals had no need to consider that issue.

## V.   Charlton v. Commissioner

In Charlton v. Commissioner, 114 T.C. 333 (2000), the putative innocent spouse knew of and had access to correct information about his then-wife's income-producing activity.  See Charlton, 114 T.C. at 341.  Even though the putative innocent spouse in Charlton knew that his wife had an income-producing Schedule C business, we concluded that the Commissioner failed to show that the putative innocent spouse had knowledge when he signed the return of any item giving rise to a deficiency.  See id.  Thus, Charlton may be cited for the proposition (contrary to respondent's position in Cheshire, majority op. at 18) that knowledge of the income-producing activity does not bar relief under section 6015(c).

The majority finds that petitioner knew that Mr. Cheshire received retirement distributions and interest on the Austin Telco account in 1992, and that she knew the amounts of the retirement distributions and interest.  See majority op. pp. 4, 16, 23. However, the majority's failure to discuss Charlton will inevitably cause confusion because, both here and in Charlton, we found that the putative innocent spouse knew of the activity which gave rise to the deficiency.  Under the doctrine of stare decisis we generally follow the holding of a previously decided published opinion of the Tax Court or explain why we are not doing so.  This is especially true when our prior published opinion involves statutory

construction.    See <u>Hesselink v. Commissioner</u>, 97 T.C. 94, 99-100 (1991).

The majority concludes that the knowledge requirement of section 6015(c) does not require the electing spouse to know that the item on the return is incorrect, see majority op. pp. 19-20, and points out that petitioner knew the amount of the unreported income. See majority op. p. 23.  In contrast, the putative innocent spouse in <u>Charlton</u> did not know the amount of unreported income from his then-wife's business.    This might be how the majority would distinguish <u>Charlton</u> from the instant case; i.e., that knowledge of an income-producing transaction or activity does not cause a putative innocent spouse to fail to qualify for the separate liability election unless the putative innocent spouse knew the amount of income involved.  If the majority is promulgating this factual distinction as a new standard, it should so state.


PARR, GALE, and MARVEL, <u>JJ</u>., agree with this dissenting opinion.