T.C. Memo. 2001-313


UNITED STATES TAX COURT


SYBIL M. SMITH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 144-00.                    Filed December 19, 2001.


<u>William Burwell Sellers</u>, for petitioner.

<u>Linda J. Wise</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  This is a proceeding commenced under section 6015, based on respondent's determination that petitioner is not entitled to relief from joint and several liability for 1987, 1992, and 1995 with respect to joint returns filed with Hugh V. Smith, Jr. (H. Smith).  Petitioner has now conceded that she is not entitled to relief for 1995 because she was not a party to a

joint return for that year.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Albertville, Alabama, at the time that she filed the petition.  From July 13, 1968, until March 8, 1995, petitioner was married to H. Smith.  H. Smith was a lawyer.

On October 17, 1988, petitioner and H. Smith filed a joint Federal income tax return for 1987 on which they reported a tax liability of $63,776.  No part of that liability was paid at the time of filing of the return.  Audit of the 1987 return commenced in January 1989.

During 1992, petitioner was employed at Bullock County Hospital as a nurse.  On August 27, 1993, petitioner and H. Smith filed a joint Federal income tax return for 1992 on which they reported a tax liability of $3,107.  No payments were made or credited at the time of filing of the 1992 return.  On September 20, 1993, assessments were made for the tax reported on the return, of $69 for an estimated tax penalty, $93.21 for a failure to pay penalty, and $95.58 for accrued interest. Collection costs of $11 were assessed on December 27, 1993.  On

February 5, 1996, a deficiency in the amount of $2,745 was assessed based on a defaulted notice of deficiency. No payments were made on the 1992 account prior to July 22, 1998.

Petitioner originally sought administrative relief from the Internal Revenue Service under prior section 6013(e). For 1987, respondent determined that petitioner was entitled to relief from liability with respect to a deficiency determined for that year, but not with respect to the tax reported on the return but not paid and penalties relating thereto. When section 6015 was adopted in 1998 (repealing section 6013(e)), petitioner's claim was reconsidered under the new Code section. Petitioner, through her counsel, was invited to supply additional information that would be relevant under section 6015. No further information was provided. In a notice of final determination sent October 5, 1999, respondent determined that petitioner was entitled to the partial relief for 1987 described above. Respondent further determined that petitioner had not shown that she met the requirements of section 6015(b) or (c) for 1992 and that she did not file a joint return for 1995. Petitioner had not claimed relief under section 6015(f), and no determination was made specifically referring to that section.

At the time of trial in May 2001, the original returns filed by petitioner and H. Smith for 1987 and 1992 were no longer available.

OPINION

The above findings of fact are sparse.  The record in this case does not include either the tax returns for the years in issue or the notices of deficiency, and, therefore, we cannot determine the nature of the adjustments leading to the deficiencies and unpaid taxes and whether they are solely attributable or allocable to H. Smith.

Section 6015 provides in pertinent part as follows:

SEC. 6015.  RELIEF FROM JOINT AND SEVERAL
            LIABILITY ON JOINT RETURN.

*    *    *    *    *    *    *

(b) Procedures For Relief From Liability Applicable to All Joint Filers.--

(1) In general.--Under procedures prescribed by the Secretary, if--

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax <u>attributable to erroneous items of 1 individual filing the joint return</u>;

(C) the other individual filing the joint return <u>establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement</u>;

(D) taking into account all the facts and circumstances, <u>it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement</u>; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,

then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

(2) Apportionment of relief.--If an individual who, but for paragraph (1)(C), would be relieved of liability under paragraph (1), establishes that in signing the return such individual did not know, and had no reason to know, the extent of such understatement, then such individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to the portion of such understatement of which such individual did not know and had no reason to know.

(3) Understatement.--For purposes of this subsection, the term "understatement" has the meaning given to such term by section 6662(d)(2)(A).

(c) Procedures To Limit Liability for Taxpayers No Longer Married or Taxpayers Legally Separated or Not Living Together.--

(1) In general.--Except as provided in this subsection, if an individual who has made a joint return for any taxable year elects the application of this subsection, the individual's liability for any deficiency which is assessed with respect to the return shall not exceed the portion of such deficiency properly allocable to the individual under section (d).

(2) Burden of proof.--Except as provided in subparagraph (A)(ii) or (C) of paragraph (3), each individual who elects the application of this

subsection shall have the burden of proof with
respect to establishing the portion of any
deficiency allocable to such individual.

(3) Election.--

(A) Individuals eligible to make
election.--

(i) In general.--An individual
shall only be eligible to elect the
application of this subsection if--

(I) at the time such election
is filed, such individual is no
longer married to, or is legally
separated from, the individual with
whom such individual filed the
joint return to which the election
relates; or

(II) such individual was not a
member of the same household as the
individual with whom such joint
return was filed at any time during
the 12-month period ending on the
date such election is filed.

(ii) Certain taxpayers ineligible
to elect.--If the Secretary demonstrates
that assets were transferred between
individuals filing a joint return as
part of a fraudulent scheme by such
individuals, an election under this
subsection by either individual shall be
invalid (and section 6013(d)(3) shall
apply to the joint return).

(B) Time for election.--An election
under this subsection for any taxable year
may be made at any time after a deficiency
for such year is asserted but not later than
2 years after the date on which the Secretary
has begun collection activities with respect
to the individual making the election.

(C) Election not valid with respect to
certain deficiencies.--If the Secretary

demonstrates that an individual making an election under this subsection had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) <u>which is not allocable to such individual under subsection (d)</u>, such election shall not apply to such deficiency (or portion).  This subparagraph shall not apply where the individual with actual knowledge establishes that such individual signed the return under duress.

*　　*　　*　　*　　*　　*　　*

(d) Allocation of Deficiency.--For purposes of subsection (c)--

(1) In general.--The portion of any deficiency on a joint return <u>allocated to an individual shall be the amount which bears the same ratio to such deficiency as the net amount of items taken into account in computing the deficiency and allocable to the individual under paragraph (3) bears to the net amount of all items taken into account in computing the deficiency</u>.

(2) Separate treatment of certain items.-<u>-If a deficiency (or portion thereof) is attributable to</u>--

(A) the disallowance of a credit; or

(B) any tax (other than tax imposed by section 1 or 55) required to be included with the joint return;

and such item is allocated to one individual under paragraph (3), such deficiency (or portion) shall be allocated to such individual.  Any such item shall not be taken into account under paragraph (1).

(3) Allocation of items giving rise to the deficiency.--For purposes of this subsection--

(A) In general.--Except as provided in paragraphs (4) and (5), <u>any item giving rise to a deficiency on a joint return shall be</u>

allocated to individuals filing the return in
the same manner as it would have been
allocated if the individuals had filed
separate returns for the taxable year.

(B) Exception where other spouse
benefits.--Under rules prescribed by the
Secretary, an item otherwise allocable to an
individual under subparagraph (A) shall be
allocated to the other individual filing the
joint return to the extent the item gave rise
to a tax benefit on the joint return to the
other individual.

\*    \*    \*    \*    \*    \*    \*

(f) Equitable Relief.--Under procedures prescribed
by the Secretary, if--

(1) taking into account all the facts and
circumstances, it is inequitable to hold the
individual liable for any unpaid tax or any
deficiency (or any portion of either); and

(2) relief is not available to such
individual under subsection (b) or (c),

the Secretary may relieve such individual of such
liability.  [Emphasis added.]

Petitioner requests that we find:  (1) That the underpayment
for 1987 and the deficiency for 1992 are entirely attributable
and allocable to H. Smith and (2) that she was abused emotionally
and physically by a spouse who kept her ignorant of their tax
liabilities, based on her uncorroborated conclusory testimony in
response to leading questions.  The unsatisfactory quality of
petitioner's testimony is shown by the following excerpts:

Q  [By petitioner's counsel]  And during the time
that you were married to Mr. Smith did he ever abuse
you emotionally or physically?

A     Yes.

Q     Who handled--who primarily handled the family finances?

A     He did.

Q     Did you know the balances in any bank accounts?

A     No.

Q     Were you able to sign on all the accounts?

A     No.

Q     What accounts could you sign on?

A     The one that was specific for the home bills.

Q     And would you have an estimate of how much money on a monthly basis would have been in that account?

A     He would deposit a certain amount each month, depending on what the bills totaled.

Q     And would you tell him what the bills totaled?

A     Yes.

Q     Is that how it worked?

A     Yes.

Q     Did you have any input in any investments that he made?

A     No.

Q     Did you have any investments of your own?

A     No.

Q     During 1987 were you employed?

A     No.

Q     Were you employed during 1992?

A     Yes.

Q     Now, as it relates to paying taxes did you ever have a discussion with your husband about who was responsible for paying taxes?

A     No.  Not--

Q     Did you--how did you think the taxes were going to get paid each month?

A     He handled all the taxes at the end of the year.  I would--he--I just assumed that he was handling what was owed or not owed or--

Q     Okay.

A     --those items.

Q     So, Ms. Smith, is it your testimony the only financial aspect of the family when you were married to Hugh V. Smith was that you would pay basically the household expenses.  Is that correct?

A     Yes.

Q     Okay.  Why was it that your husband handled all the financial matters?

A     That's what he wanted to do.  That was--

Q     Okay.

A     --just the way it had been for 20-some-odd years is he handled everything but the basic home expense.

Q     Did he insist that they be done that way?

A     Yes.

Q     Did you have any say-so at all?

A     No.

Q    Did you believe that your husband was paying the family taxes?

A    Yes.

Q    Was there anything at all in just how your husband behaved that would indicate that he didn't have the financial ability to pay the taxes?

A    No.

Q    Were you aware that he was ever negligent in paying taxes at the time?

A    At that time?

Q    Yes.

A    No.

Q    There was nothing that made you think that he wasn't going to pay taxes for a year?

A    No.

Q    As far as you knew did he make all the tax payments on time?

A    As far as I knew.

On cross-examination, petitioner testified:

Q    * * *  You stated that you believed your husband was paying taxes.  What do you base your belief on?

A    Nothing was said that there were--there was nothing told to me that bills were not being paid.

Q    Did you ever ask him if he would be paying the taxes?

A    I don't recall.  I could have but I don't recall asking him that.

Without any elaboration on the subject matter of petitioner's testimony, and based on her own words rather than her counsel's, we are not satisfied that her conclusions are based on facts.

Petitioner testified in a similar manner that all income other than her salary reported on the 1992 return was attributable to her husband and that income taxes were withheld from her earnings during 1992. The stipulated facts, however, contradict petitioner's recollection of income taxes being withheld. According to the stipulation, no payments on the 1992 liabilities were made before 1998. Any withholding from petitioner's wages would have been reflected as of April 1993. In the absence of either the tax return or the notice of deficiency for 1992, we cannot tell whether the deficiency resulted from unreported income, from petitioner's or H. Smith's income, or from disallowed deductions that were apparent on the face of the return.

Petitioner claims that she is entitled to relief under section 6015(b), (c), or (f) for 1992 and under section 6015(f) for 1987. She concedes that, with respect to liabilities reported on the return but not paid, relief is available only under section 6015(f). Petitioner relies on the above testimony to establish that the understatement of tax for 1992 was attributable to H. Smith and that she had no reason to know of the deficiency. Petitioner argues that it would be inequitable

to hold her responsible for the understatement based on her response to questions about vacations and jewelry and separate accounts. She relies on the absence of the factors listed in the statute as disqualifications, such as fraudulent intent or transfers of property to avoid tax. Otherwise, she has not cited any evidence from which we could conclude that respondent abused his discretion in denying relief under section 6015(f). See Cheshire v. Commissioner, 115 T.C. 183, 198 (2000).

Because of the gaps in the record, we need not discuss the separate elements of each type of relief provided by section 6015. The record is insufficient for us to conclude that petitioner is entitled to relief. At the time of trial, the original returns that were sent to the Internal Revenue Service were not available. Petitioner's counsel stated at trial that "we've got unsigned copies", but the copies were not produced. During the administrative consideration of petitioner's claim for relief under section 6015, petitioner was invited to present additional information, but no further information was provided by petitioner.

The absence of corroborative testimony or documentation in this case is troublesome. Petitioner's counsel claimed to have served a subpoena duces tecum for trial on H. Smith and only belatedly stated to the Court that the subpoena had been disregarded. Counsel cited H. Smith's failure to appear as

indicative "of the fact that he is not cooperating." Petitioner complains in her posttrial brief that respondent would not agree to a posttrial deposition of H. Smith, but petitioner has not shown any reason why the record should be reopened after trial for the purpose of receiving evidence that cannot be described as "newly discovered".

Petitioner argues that she had a reasonable belief that the tax liability reported on the joint returns would be paid. Her alleged belief, however, was based only on the absence of knowledge that payment would not be made. She testified that she did not inquire (or did not recall inquiring) whether or how that amount would be paid. The liability shown on the 1987 return exceeded $60,000. Petitioner is neither uneducated nor unintelligent. We do not believe that she would have been disinterested in how such a large amount would have been paid or oblivious about the family resources from which the taxes could have been paid.

The parties' briefs dispute whether certain case precedents are persuasive or distinguishable. The record, however, does not support findings sufficient to make a comparison to the circumstances in prior cases. Petitioner's briefs assert facts that are not in the record, see Rule 143(b), and petitioner seeks to impose on respondent the burden of negating conclusory testimony such as that quoted above. We cannot, on this record,

attribute or allocate the items giving rise to the deficiency to H. Smith.  We cannot conclude that it would be inequitable to hold petitioner to the consequences of filing a joint return.  On consideration of the entire record, we conclude that petitioner's bald assertions are not reliable.  We conclude further that petitioner is not entitled to relief with respect to the underpayment and penalties for 1987 or the deficiency and penalties for 1992.

To reflect the foregoing,

Decision will be entered

for respondent.