T.C. Summary Opinion 2004-16


UNITED STATES TAX COURT


SANDRA BROWDA, Petitioner, AND DAVID BROWDA, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17710-02S.          Filed February 12, 2004.


Sandra Browda, pro se.

David Browda, pro se.

<u>Michael E. Melone</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time that the petition was filed.[1]  The decision to

---

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for the
taxable years in issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Pursuant to the provisions of section 6015, petitioner made an administrative request for relief from Federal income tax liabilities for the taxable years 1994, 1995, 1996, 1997, and 1998. Respondent denied petitioner's request for relief in a notice of determination issued on October 11, 2002. Petitioner timely filed a petition with this Court under section 6015(e) for review of respondent's determination. Intervenor, petitioner's former husband, filed a Notice of Intervention under Rule 325(b) and opposes such relief.

The sole issue for decision is whether respondent abused his discretion in denying petitioner relief from joint and several liability under section 6015(f). We hold that he did.

Background

Some of the facts have been stipulated, and they are so found. Petitioner resided in Berkeley, California, at the time that her petition was filed with the Court.

Petitioner and intervenor David Browda (intervenor) were married to each other on March 22, 1970, and had one child, a daughter, during their marriage. In or about 1972, petitioner and intervenor jointly purchased a home in which they resided throughout their marriage.

Petitioner is a high school graduate who was employed as a librarian by a law firm during the taxable years in issue. Petitioner's employer withheld taxes from her wages, and such withholding was more than sufficient to pay petitioner's personal income tax liabilities. Intervenor is a college graduate who was self-employed as a salesman during the taxable years in issue. Intervenor did not make estimated quarterly tax payments in respect of his self-employment income; rather, he relied on petitioner's excess withholding to satisfy, at least in part, his personal income tax liabilities.

Petitioner and intervenor maintained separate bank accounts throughout their marriage. Petitioner primarily paid the monthly expenses related to their daughter. Intervenor was responsible for paying most of the household expenses, which included, among other things, the monthly home mortgage, property taxes, auto insurance, and household utilities.

Petitioner and intervenor filed joint Federal and State income tax returns during their marriage. Petitioner did not participate in the preparation of any of their joint tax returns. Each year petitioner gave her Form W-2, Wage and Tax Statement, to intervenor who had the tax return prepared by a paid preparer. Petitioner willingly signed each tax return without meticulous examination. Prior to the taxable years in issue, intervenor paid all income tax balances due with respect to the couple's

jointly filed tax returns.

Several times during the couple's marriage, the California Franchise Tax Board notified petitioner and her employer that her wages would be subject to garnishment for intervenor's share of the unpaid State income taxes reported on their jointly filed State income tax returns. On each such occasion, petitioner notified intervenor of the impending garnishment and intervenor paid the State income taxes due.

Petitioner and intervenor filed joint Federal income tax returns for the taxable years 1994, 1995, 1996, 1997, and 1998. The tax returns were prepared by a paid income tax return preparer. The 1994 tax return was filed on September 23, 1996; the 1995 tax return was filed on October 21, 1996; and the 1996, 1997, and 1998 tax returns were filed on October 23, 2000.[2] After prepayments consisting principally of petitioner's tax withholdings, petitioner and intervenor reported the following balances of tax due on each tax return:[3]

---

[2] The 1994 tax return had no date with petitioner's signature. However, intervenor signed the 1994 tax return on Sept. 17, 1996. Petitioner signed the 1995 tax return on Oct. 14, 1996. The 1996 tax return had no date with petitioner's signature. However, intervenor signed the 1996 tax return on Aug. 31, 1998. Petitioner signed the 1997 return on Aug. 31, 1998. Petitioner signed the 1998 return on Mar. 8, 2000.

[3] All amounts have been rounded.

| Year | Amount of Taxes Due[1] |
|------|------------------------|
| 1994 | $1,484 |
| 1995 | 2,397 |
| 1996 | 4,490 |
| 1997 | 7,291 |
| 1998 | 6,727 |

[1] Given petitioner's excess withholdings, these amounts relate to intervenor's self-employment taxes and sec. 1 income taxes on intervenor's self-employment income.

No payments were submitted with any of the tax returns.[4] Petitioner knew that there was a balance of tax due with respect to each filed tax return.

Petitioner and intervenor were legally separated on October 29, 1999.

In 2000, petitioner notified intervenor that her 1999 tax refund in the amount of $921 had been applied by respondent toward the prior years' unpaid joint tax liabilities. On August 2, 2000, intervenor sent petitioner a check for $921 to reimburse her for her 1999 tax refund.[5]

Petitioner and intervenor sold their jointly owned home in 2000. No portion of the sale proceeds was applied to the outstanding tax liabilities in issue.

---

[4] During 1997 and 1998, intervenor made tax payments to respondent toward the 1994 tax liability which totaled $778. A $250 payment was also made with respect to the 1996 tax liability at the time a Form 4868, Application for Automatic Extension of Time To File U.S. Individual Income Tax Return, was filed for the 1996 taxable year.

[5] Petitioner did not learn that her 1999 tax refund had been applied by respondent toward the prior years' unpaid joint tax liabilities before signing any of the tax returns for the taxable years in issue.

Petitioner and intervenor were divorced in 2001.

On October 1, 2001, petitioner submitted to respondent a Form 8857, Request for Innocent Spouse Relief, requesting section 6015 relief. Petitioner lived apart from intervenor during the 12-month period preceding her request.

On November 5, 2001, petitioner submitted to respondent a completed Innocent Spouse Questionnaire and related attachments.

On November 14, 2001, respondent received from intervenor a Form 12507, Innocent Spouse Statement, and a Form 12508, Innocent Spouse Information Request.

On March 11, 2002, respondent sent a preliminary letter to petitioner notifying her that she was not entitled to relief under section 6015.

In April 2002, petitioner submitted to respondent a Form 12509, Statement of Disagreement. Petitioner also submitted a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals.

On October 11, 2002, respondent issued a notice of determination advising petitioner that she was not entitled to relief under section 6015.

Discussion

As a general rule, spouses filing a joint Federal income tax return are jointly and severally liable for all taxes shown on the return or found to be owing. Sec. 6013(d)(3); Cheshire v.

<u>Commissioner</u>, 115 T.C. 183, 188 (2000), affd. 282 F.3d 326 (5th Cir. 2002).  However, relief from joint and several liability is available to certain taxpayers under section 6015.  There are three types of relief available under section 6015:  (1) Section 6015(b)(1) provides full or apportioned relief from joint and several liability; (2) section 6015(c) provides proportionate tax relief to divorced or separated taxpayers; and (3) section 6015(f) provides equitable relief from joint and several liability in certain circumstances if neither section 6015(b) nor (c) is available.

Petitioner concedes that she is not eligible for relief under either section 6015(b) or (c).  Petitioner has instead requested equitable relief under section 6015(f).

Section 6015(f) provides:

> SEC. 6015(f) Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
>> (1) taking into account all the facts and circumstances, it is inequitable to hold  the individual liable for any unpaid tax or any deficiency (or any portion of either); and
>>
>> (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

We review respondent's denial of equitable relief to petitioner after a trial de novo and under an abuse of discretion standard.  <u>Ewing v. Commissioner</u>, 122 T.C. ___ (2004); <u>Cheshire</u>

v. Commissioner, supra at 198; Butler v. Commissioner, 114 T.C. 276, 292 (2000).  Petitioner bears the burden of proving that respondent's denial of equitable relief under section 6015(f) was an abuse of discretion.  Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002); Jonson v. Commissioner, 118 T.C. 106, 113 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).  Petitioner must demonstrate that respondent exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law.  Jonson v. Commissioner, supra at 125; Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

As directed by section 6015(f), the Commissioner has prescribed procedures to be used in determining whether the requesting spouse qualifies for relief from joint and several liability under section 6015(f).  These procedures are set forth in Revenue Procedure 2000-15, 2000-1 C.B. 447 (the revenue procedure).[6]  Where, as here, the requesting spouse satisfies the threshold conditions,[7] section 4.02(1) of the revenue procedure sets forth the circumstances under which respondent ordinarily will grant relief to that spouse under section 6015(f) in a case like the instant case where a liability is reported on a joint return but not paid.  Subject to limitations not applicable here,

---

[6]  As relevant herein, Rev. Proc. 2000-15, sec. 3, 2000-1 C.B. 447, 448, is applicable with respect to any liability for tax arising after July 22, 1998, or any liability for tax arising on or before July 22, 1998, that was unpaid on that date.

[7]  Respondent concedes that petitioner has satisfied the threshold conditions of Rev. Proc. 2000-15, sec. 4.01, supra.

section 4.02(1) of the revenue procedure provides that equitable
relief will ordinarily be granted if all of the following
elements are satisfied:

> (a) At the time relief is requested, the
> requesting spouse * * * has not been a member of the
> same household as the nonrequesting spouse at any time
> during the 12-month period ending on the date relief
> was requested;

> (b) At the time the return was signed, the
> requesting spouse had no knowledge or reason to know
> that the tax would not be paid. The requesting spouse
> must establish that it was reasonable for the
> requesting spouse to believe that the nonrequesting
> spouse would pay the reported liability. * * *; and

> (c) The requesting spouse will suffer economic
> hardship if relief is not granted.  For purposes of
> this section, the determination of whether a requesting
> spouse will suffer economic hardship will be made by
> the Commissioner or the Commissioner's delegate, and
> will be based on rules similar to those provided in
> section 301.6343-1(b)(4) of the Regulations on
> Procedure and Administration. [Rev. Proc. 2000-15, sec.
> 4.02(1), 2000-1 C.B. at 448]

Respondent concedes that petitioner lived apart from
intervenor during the 12-month period preceding the date of her
request for equitable relief and that petitioner will suffer
economic hardship if relief is not granted.

A.  <u>Knowledge or Reason To Know</u>

The relevant knowledge in the case of a reported but unpaid
liability is whether when the return was signed, the taxpayer
knew or had reason to know "that the tax would not be paid."  <u>Id.</u>

sec. 4.02(1)(b). Accordingly, we must consider whether, "taking into account all the facts and circumstances", sec. 6015(f)(1), petitioner knew or had reason to know that intervenor would not pay the taxes on intervenor's self-employment income shown as due on the tax returns for the taxable years in issue.

Petitioner contends that she had no knowledge that any of the unpaid joint tax liabilities would not be paid by intervenor. Petitioner did know that there were income taxes due for each of the taxable years in issue when she signed each tax return. However, petitioner testified that "[Intervenor] said that he would take care of the [taxes] due, as my taxes were taken out of my paycheck and none were taken out of his. And he did pay the taxes. He paid the taxes for most of the years." Having observed petitioner's appearance and demeanor at trial, we find her testimony to be honest, forthright, and credible. In addition, petitioner's testimony is corroborated by the fact that intervenor did generally pay the tax balances due as a result of intervenor's self-employment income as reported on the couple's jointly filed income tax returns. Accordingly, we conclude that petitioner had no knowledge that intervenor would not pay the taxes due on the tax returns filed for the taxable years in issue.

Petitioner likewise contends that she had no reason to know that intervenor would not pay those tax liabilities. Petitioner

and intervenor maintained separate checking accounts at all times during their marriage. Intervenor was responsible for paying the vast majority of the household expenses, including the monthly mortgage payment, property taxes, automobile insurance, and household utilities. It was intervenor's practice for petitioner to provide him with her Forms W-2 and then for intervenor to have their tax returns prepared by a paid return preparer. Although petitioner signed the tax returns and was aware of any taxes due, intervenor assured petitioner that he would pay the tax liabilities. In fact, intervenor had paid any taxes due for the taxable years prior to the taxable years in issue. Additionally, intervenor also made several tax payments with respect to the tax balances due for the 1994 and 1996 taxable years.

The taxes due for the taxable years in issue were attributable to intervenor's self-employment earnings. As such, intervenor reimbursed petitioner for her 1999 tax refund which was applied by respondent to the couple's outstanding joint tax liabilities. Additionally, on several occasions during their marriage petitioner's wages were subject to garnishment from the California Franchise Tax Board regarding intervenor's share of the couple's outstanding liability. Intervenor handled these matters and paid any necessary State income taxes due to prevent petitioner's wages from being garnished. Finally, the record

suggests that the taxes due for the taxable years in issue were not paid because of an unexpected downturn in intervenor's business that persisted over an extended period. Accordingly, on the record before us, we conclude that petitioner did not have reason to know that the income taxes for the taxable years in issue would not be paid by intervenor.

B. Conclusion

Based on our review of all the facts and circumstances, we hold that petitioner is entitled to relief under section 6015(f) and that respondent's denial of relief was an abuse of discretion.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered for petitioner.