T.C. Summary Opinion 2006-34

UNITED STATES TAX COURT

BRENDA J. CLARK, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9035-04S.                    Filed February 22, 2006.

Brenda J. Clark, pro se.

Inga C. Plucinski, for respondent.

COUVILLION, Special Trial Judge:  This case was heard
pursuant to section 7463 in effect when the petition was filed.[1]
The decision to be entered is not reviewable by any other court,
and this opinion should not be cited as authority.

_____

[1]Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect for the years at
issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

In a notice of deficiency to petitioner and her former spouse, James B. Clark (Mr. Clark), respondent determined income tax deficiencies, an addition to tax, and penalties as follows:

|       |            | Addition to Tax | Penalty      |
| Year  | Deficiency | Sec. 6651(a)(1) | Sec. 6662(a) |
|-------|------------|-----------------|--------------|
| 1998  | $ 7,494    | $776.75         | $1,498.80    |
| 2000  | 14,163     | --              | 2,832.60     |
| 2001  | 5,754      | --              | 1,150.80     |

The sole issue for decision is whether, under section 6015, petitioner is entitled to relief from joint liability for the above deficiencies, addition to tax, and penalties.

Some of the facts were stipulated. Those facts, with the exhibits annexed thereto, are so found and are made part hereof. Petitioner's legal residence at the time the petition was filed was West Valley City, Utah.

During the years at issue, petitioner was married to Mr. Clark. The two filed joint Federal income tax returns for 1998, 2000, and 2001. Petitioner and Mr. Clark were divorced on September 26, 2003. On March 1, 2004, respondent issued a notice of deficiency jointly to petitioner and Mr. Clark in which the above deficiencies, addition to tax, and penalties were determined. Mr. Clark filed a petition with this Court, in his own behalf, for a redetermination of the adjustments in the notice of deficiency. That case proceeded to trial, and the Court sustained respondent on all determinations in the notice of

deficiency.  <u>Clark v. Commissioner</u>, T.C. Memo. 2005-292.

Petitioner was not a party in Mr. Clark's case.  In this case,

petitioner has not challenged the determinations in the notice of

deficiency.  Petitioner's sole claim is that she is entitled,

under section 6015, to relief from joint liability for the 3

years in question.[2]  Mr. Clark was served with notice of this

case and his right to intervene.  Mr. Clark did not file a notice

of intervention and did not appear or participate in the trial of

this case.

Petitioner and her spouse were married in 1975 and had three

children, all of whom were adults at the time of trial.  On the

1998 return, one child was claimed as a dependent.  None were

claimed as dependents on the subsequent returns.

Petitioner's educational background included studies at a

vocational technical school, which was a part of Idaho State

University, where she took accounting and business math courses.

For approximately 25 years, petitioner's employment was primarily

as a secretary, which, at times, involved accounting and

administrative record keeping.  Petitioner's spouse was an

accountant.  At the time of trial, petitioner described her

---

[2]It follows that a decision in this case will be entered
against her for the determinations in the notice of deficiency,
and the Court will further decide on petitioner's claim for
relief under sec. 6015.  Except as otherwise provided in sec.
6015, petitioner bears the burden of proof.  Rule 142(a); <u>Alt v.
Commissioner</u>, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34
(6th Cir. 2004).

employment as being in the "accounting area" for her employer Boise Cascade Corp.

Prior to 1998, petitioner and Mr. Clark lived in Idaho. During 1998, they moved from Idaho to Murray, Utah, where they purchased a home. In 1999, Mr. Clark quitclaimed his interest in the home to petitioner. At some point in time, petitioner sold the home and purchased a condominium in West Valley City, Utah. Although petitioner and Mr. Clark were divorced on September 26, 2003, they lived together during the 3 years at issue.

As previously stated, petitioner and Mr. Clark filed joint Federal income tax returns for 1998, 2000, and 2001. On their 1998 return, petitioner and Mr. Clark reported the following income and deductions:

| | |
|---|---:|
| Wages and salary | $36,718 |
| Taxable interest | 305 |
| Taxable refunds | 983 |
| Total pensions and annuities (taxable portion) | 14,475 |
| Unemployment compensation | 4,510 |
|   Total income | $56,991 |
| Moving expenses | (35,304) |
|   Adjusted gross income | $21,687 |
| Itemized deductions | (9,767) |
| Dependency exemptions | (8,100) |
|   Taxable income | $ 3,820 |

The $35,304 in moving expenses was for the move by petitioner and Mr. Clark from Idaho to Murray, Utah.[3]

---

[3]In Mr. Clark's case before this Court, he admitted that the $35,304 claimed for moving expenses included approximately

(continued...)

For the year 2000, petitioner and Mr. Clark filed a joint Federal income tax return on which they reported the following income and deductions:

| | |
|---|---:|
| Wages and salary | $27,007 |
| Taxable interest | 17 |
| Loss, Schedule C, Profit or Loss From Business | (10,607) |
| Total income | $16,417 |
| Itemized deductions | (10,741) |
| Dependency exemptions | (5,600) |
| Taxable income | $ 76 |

Of the items listed above, the $10,607 Schedule C loss came from a trade or business activity of Mr. Clark. Of the $27,007 in wage and salary income, $24,906.91 represented petitioner's earnings and $2,100 represented earnings of Mr. Clark.

For the year 2001, petitioner and Mr. Clark filed a joint return in which they reported the following income:

| | |
|---|---:|
| Wages and salary | $41,660 |
| Taxable refunds | 1,218 |
| Total income | $42,878 |

Of the wage and salary reported, $25,350 represented petitioner's wage and salary income and $16,310 represented wages and salary of Mr. Clark.

---

[3](...continued)
$20,000 to replace the roof of their Idaho residence, which presumably was an improvement that would facilitate its sale in connection with petitioner and Mr. Clark's move from Idaho to Utah.

Approximately 1 year before the issuance of the notice of deficiency, and presumably motivated by respondent's examination of the tax returns for the years at issue, petitioner filed Form 8857, Request for Innocent Spouse Relief. In that request, petitioner claimed as her basis for relief:

> My husband prepares our taxes and I am not informed of any information of ways he prepares these taxes. I don't know of expenses or income he claims. I do not review the taxes he prepares. He is responsible for any taxes due, past and future. I know he is being audited for 1998, 2000, and 2001, and I have no input into these returns and know nothing of these results. Take my liability for any taxes owed off me because I am not responsible for his actions, filings, information, or money.

Respondent's action on petitioner's application for section 6015 relief is set out in the notice of deficiency. In addition, the parties stipulated a copy of the transcript of petitioner's hearing before the Appeals officer. That officer considered petitioner's application for relief under section 6015(b), (c), and (f). He concluded that petitioner was not entitled to relief under the cited provisions.

Generally, married taxpayers may elect to file jointly a Federal income tax return. Sec. 6013(a). Each spouse is jointly and severally liable for the entire tax due. Sec. 6013(d)(3). A spouse (requesting spouse) may, however, seek relief from joint and several liability under section 6015(b) or, if eligible, may seek an allocation of liability under section 6015(c). Sec.

6015(a).  If relief is not available under section 6015(b) or (c), a requesting spouse may seek equitable relief under section 6015(f).  Sec. 6015(f)(2).

A prerequisite to granting relief under section 6015(b) or (c) is the existence of a tax deficiency or, as referred to in various cases, an "understatement of tax".  Sec. 6015(b)(1)(B) and (c)(1); Block v. Commissioner, 120 T.C. 62, 65-66 (2003).  In this case, there are understatements of tax; consequently, petitioner is entitled to consideration for relief under section 6015(b) and (c) as well as section 6015(f).

Under section 6015(b), a taxpayer is entitled to full or apportioned relief from joint and several liability for an understatement of tax on a joint return if, among other requirements, the taxpayer establishes that he or she "did not know, and had no reason to know" that the other spouse understated the tax on the return.  Sec. 6015(b)(1)(C).

In the examination of petitioner's joint returns for the 3 years at issue, because of inadequate records respondent determined the taxable income of petitioner and her spouse by use of the bank deposits method.  The issue in this case, petitioner's entitlement to relief from joint liability, to some extent is predicated on her personal background in education and work experience in areas of business and accounting.  Petitioner, therefore, knew or should have known of the necessity of books

and records with respect to the determination of taxable income. Since petitioner and her husband's records were so deficient that respondent was required to employ an indirect method in determining their income for the years at issue, it is a fair observation that petitioner bears some culpability in the failure to keep books and records. That alone, however, does not foreclose petitioner's entitlement to claim relief from joint liability under section 6015.

Section 6015(b)(1) allows relief from joint and several liability if five elements are met. Two of those elements are pertinent in this case: (1) On the joint return, there is an understatement of tax attributable to erroneous items of one individual filing the return, and (2) the other individual filing the joint return establishes that, in signing the return, he or she did not know, and had no reason to know, that there was such an understatement. Sec. 6015(b)(1)(A), (B), and (C). With respect to the year 1998, in the examination of petitioner's bank accounts, which included one bank account of petitioner and a joint account with her husband, respondent determined that several deposits into these accounts, totaling $9,131, constituted unreported gross income. Another item of significance was the claimed deduction for moving expenses in the amount of $35,304 on the 1998 return. In the audit of the returns, petitioner readily admitted that such an amount for

moving was excessive and that the actual cost was between $300 to $500. She and her spouse had not employed a commercial house mover but had rented a U-Haul trailer and a truck, which they drove themselves. That exorbitant cost was also noted in Mr. Clark's case before this Court. Petitioner, therefore, knew or should have known that these unexplained deposits were coming from somewhere, i.e., her husband's trade or business activity, and also admitted the $35,304 deduction for moving expenses was incorrect. Thus, for 1998, petitioner knew, in signing the return, that there was an understatement of tax with respect to the items discussed. Petitioner, therefore, is not entitled to relief for 1998.

For the year 2000, the joint return included a Schedule C for an Internet trade or business activity of Mr. Clark, which petitioner was well aware of. On Schedule C for that year, the reported gross income was $1,682, the expenses deducted were $12,289, and the reported net loss was $10,607. Respondent determined that the gross receipts from the activity were $33,986.23 and that, during the course of the year, $11,019 was transferred from the joint account petitioner had with her husband to petitioner's personal account. Thus, the $10,607 loss from this Schedule C activity served to reduce petitioner and Mr. Clark's wage and salary income of $27,007, $24,906.91 of which represented earnings of petitioner. Petitioner knew her husband

had a business and, therefore, knew that these deposits or transfers to her account came from that business. Therefore, in connection with petitioner's claim for relief, for purposes of section 6015(b), there was an understatement of tax attributable to erroneous items of the other spouse, and petitioner, in signing the return, knew or had reason to know of an understatement of tax attributable to this income. Sec. 6015(b)(1)(B) and (C). The Court, therefore, sustains respondent's determination that petitioner is not entitled to relief under section 6015(b) for the year 2000.

For the year 2001, the tax return for that year included an itemized deduction of $21,355 for unreimbursed employee business expenses. In the audit of the return for that year, respondent contacted Mr. Clark's employer, and that employer verified that these claimed expenses had been reimbursed to Mr. Clark. Respondent also determined that, as in prior years, unexplained deposits of $7,038 were made to petitioner's account during 2001, all of which were attributable to her husband's activity. The Court is satisfied that petitioner knew or had reason to know of this omitted income in the same fashion as she did for the 2 earlier years. Respondent also determined, as was determined in earlier years, that the unexplained deposits to her account also represented income from her husband's trade or business activity. The Court holds, therefore, that, in signing the income tax

return for 2001, petitioner knew that there was an underpayment of tax attributable to these items. Respondent, therefore, is sustained in denying petitioner relief for the year 2001 under section 6015(b).

The Court next addresses whether petitioner is entitled to relief under section 6015(c). Section 6015(c) provides relief from joint liability for spouses either no longer married, legally separated, or living separate and apart. Generally, this avenue of relief allows a spouse to elect to be treated as if a separate return had been filed. <u>Rowe v. Commissioner</u>, T.C. Memo. 2001-325. Section 6015(c)(2) places the burden of proof with respect to establishing the portion of the deficiency allocable to the electing spouse upon that spouse. An election is not valid if the Commissioner demonstrates that the electing spouse had actual knowledge of an item giving rise to the deficiency. Sec. 6015(c)(3)(B).

As to these 3 years, respondent considered the same facts discussed above relating to petitioner's claim for relief under section 6015(b). Based on these facts, the examiner concluded that petitioner knew or had reason to know of the various transactions that gave rise to the deficiencies, and that petitioner benefited from the redetermined items of income and disallowed expenses. As noted earlier, some of the deposits to petitioner's bank account came from Mr. Clark's trade or

business.  Since petitioner had actual knowledge of these transfers, that alone precludes her from claiming relief under section 6015(c).

If a taxpayer's request for relief under section 6015(f) is denied, the taxpayer may petition this Court (pursuant to section 6015(e)(1)) for a review of the determination.  Ewing v. Commissioner, 118 T.C. 494, 497-507 (2002).  To prevail, petitioner must prove that respondent's denial of equitable relief from joint liability under section 6015(f) was an abuse of discretion.  Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003); Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002); Butler v. Commissioner, 114 T.C. 276, 291-292 (2000).

Section 6015(f) provides:

> SEC. 6015(f). Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
>
> (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

As directed by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying Rev. Proc. 2000-15, 2000-1 C.B. 447, that are to be

used in determining whether it is inequitable to hold a requesting spouse liable for all or part of the liability for any unpaid tax or deficiency.[4]  The requesting spouse must satisfy seven conditions (threshold conditions) before the Commissioner will consider a request for relief under section 6015(f).  Rev. Proc. 2003-61, supra.  Respondent agrees that petitioner has satisfied those threshold conditions.

Where, as here, the requesting spouse satisfies the threshold conditions, Rev. proc. 2003-61, sec. 4.03,[5] lists factors to be considered in determining whether to grant equitable relief.  Therefore, the Court considers the factors in Rev. Proc. 2003-61, sec. 4.03(2)(a) and (b) in determining whether respondent abused his discretion in denying equitable relief under section 6015(f).

In this case, petitioner satisfies only one of the factors listed in the revenue procedure.  Petitioner divorced Mr. Clark in 2003; therefore, she satisfies the first factor.  With respect

---

[4]Rev. Proc. 2000-15, 2000-1 C.B. 447, was superseded by Rev. Proc. 2003-61, 2003-2 C.B. 296, and is effective as to requests for relief filed on or after Nov. 1, 2003, and also is effective for requests for relief pending on Nov. 1, 2003, as to which no preliminary determination letter had been issued as of that date. Petitioner's application for relief was filed on Feb. 18, 2003, and the report of the Appeals officer is dated Feb. 15, 2005. Therefore, petitioner's claim for relief was pending on Nov. 1, 2003.

[5]The Court need not consider Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, since that section relates to "underpayments".

to the second factor, the taxpayer must show that he or she would be unable to pay basic reasonable living expenses if relief were not granted. Monsour v. Commissioner, T.C. Memo. 2004-190. Being unable to pay basic reasonable living expenses would amount to economic hardship. Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. Petitioner has not established that denial of her request for relief would result in economic hardship. She was gainfully employed, she had no dependents to support, and, in 1999, petitioner's spouse had quitclaimed his interest in their Murray, Utah, home. In the divorce decree, petitioner was awarded $27,500, which represented all of the proceeds from the sale of that home. Additionally, the divorce decree ordered the former spouse to pay petitioner alimony of "not less than $300 per month" until either her death, remarriage, or cohabitation with an adult male who was not a blood relative. The Court fails to see, and petitioner has not established, that she would suffer economic hardship if her request for relief from joint liability is denied.

As to the third factor, the Court has held that petitioner, particularly in light of her educational background and chosen vocation, knew or should have known that Mr. Clark's bookkeeping was deficient. Moreover, petitioner received direct deposits, both in her personal account and her joint account with Mr. Clark, of unreported gross income during each of the years at

issue. Therefore, petitioner knew when she signed her joint return for each of the years at issue that there was an understatement of tax. Rev. Proc. 2003-61, supra, specifically states that actual knowledge by the requesting spouse of the item giving rise to the deficiency is a strong factor weighing against relief. This strong factor may only be overcome if the factors in favor of equitable relief are particularly compelling.

The fourth and sixth factors are neutral. There was no legal obligation on either side to pay for the liability for the years at issue and there is no evidence that petitioner either failed to comply with or fully complied with tax obligations.[6]

Petitioner also fails to satisfy the fifth factor, because although the gross income and claimed deductions from which the liability arises is directly attributable to Mr. Clark,[7] petitioner received a significant benefit from the items giving rise to the deficiency. This benefit goes beyond that of normal support. Part of Mr. Clark's unreported income was deposited

---

[6]In determining whether petitioner complied or failed to comply with tax obligations, the Court notes that petitioner did not allege she suffered any abuse, mental or physical, from Mr. Clark. In addition, petitioner presented no evidence that she was in poor mental or physical health either when she signed the return or when she filed her request for relief.

[7]The liability for the years at issue consisted of unreported nonemployee compensation to Mr. Clark, a claimed deduction for unreimbursed employee expenses for Mr. Clark, a claimed deduction for moving expenses for Mr. Clark, and Schedule C losses attributed to Mr. Clark's business.

directly into petitioner's personal account, and the remainder was deposited into their joint bank account. In addition, the exaggeration of Mr. Clark's moving expenses, unreimbursed employee expenses, and Schedule C losses reduced petitioner's tax liability on the joint returns. Finally, petitioner's greatest benefit was the quitclaim deed Mr. Clark executed in 1999, which gave all of his interest in their home solely to petitioner. The house was purchased in 1998, presumably with the income of both petitioner and Mr. Clark and with income that Mr. Clark failed to report. As previously noted, petitioner sold that home, received all proceeds from the sale, and later used them to purchase a condominium.

The failure of petitioner to satisfy all but one of the factors in Rev. Proc. 2003-61, supra, is determinative. After considering all the facts and circumstances, the Court holds that there was no abuse of discretion by respondent in denying relief to petitioner under section 6015(f). The Court, therefore, sustains that denial.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.