T.C. Summary Opinion 2006-44


UNITED STATES TAX COURT


MARILYN STRINGHAM, a.k.a. MARILYN OLSEN, Petitioner,
AND FORREST BIRD, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22346-03S.          Filed March 29, 2006.


Marilyn Stringham, pro se.

Forrest Bird, pro se.

<u>Inga C. Plucinski</u>, for respondent.


COUVILLION, <u>Special Trial Judge</u>:  This case was heard

pursuant to section 7463 in effect when the petition was filed.[1]

---

[1]Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect for the year at issue,
and all Rule references are to the Tax Court Rules of Practice
and Procedure.

The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency of $4,135 in petitioner's Federal income tax for the year 2001. Petitioner does not challenge the deficiency. This case arises from petitioner's election to seek relief from joint and several liability for Federal income tax for the year 2001 under section 6015(b), (c), and (f). Respondent determined that petitioner is not entitled to relief. The sole issue for decision is whether petitioner is entitled to relief under section 6015(b), (c), and (f).

Some of the facts were stipulated. Those facts, with the exhibits annexed thereto, are so found and made part hereof. Petitioner's legal residence at the time the petition was filed was Altamont, Utah.

During the year at issue, petitioner was married to Forrest Bird (intervenor). Petitioner and intervenor were married in 1997. Each had been married previously. Petitioner has three sons from her prior marriage, and intervenor has one son and one daughter from his prior marriage. All the children were grown and living outside their parent's home during the year at issue. Petitioner and intervenor separated in July 2003, and their divorce was finalized on November 13, 2003.

Petitioner is a licensed practical nurse (LPN). She received her training at Weaver State College and is currently an

administrative assistant at Uintah Basin Medical Center in Roosevelt, Utah. The record does not reflect whether petitioner was an administrative assistant during the year at issue; however, she testified that she has been continually employed in the medical field since she received her LPN degree in 1985.

During 2001, intervenor was employed by the county as a truck driver. From 1990 until 1999, intervenor was employed as a crude oil transport driver with Chevron; however, he exercised an early retirement option in 1999 when Chevron was in the process of a cost reduction in its activities.

Petitioner and intervenor filed their 2001 joint Federal income tax return timely. They failed to include as income on that return several withdrawals totaling $16,260 from intervenor's Merrill Lynch Individual Retirement Account (IRA). On December 8, 2003, separate notices of deficiency were issued to petitioner and intervenor in which respondent determined a deficiency of $4,135 in Federal income tax for the year 2001 based on the failure of petitioner and intervenor to include the IRA withdrawals in income. Petitioner, thereafter, filed a timely petition in this Court. After the petition was filed, petitioner filed Form 8857, Request for Innocent Spouse Relief, on February 3, 2004. That request was subsequently denied.

Petitioner's sole position is that she is entitled to relief from joint liability under section 6015. Respondent, pursuant to

Rule 325 and <u>King v. Commissioner</u>, 115 T.C. 118 (2000), served notice of this proceeding on intervenor. Intervenor filed a Notice of Intervention on April 26, 2004, and he testified at the trial to object to the relief sought by petitioner. Intervenor has conceded the deficiency determination. In his intervention, and at trial, intervenor testified that petitioner knew of the IRA withdrawals during the year at issue because they were deposited in their joint bank account and used for home improvements, debts, and a downpayment on a car for petitioner. Except as otherwise provided in section 6015, petitioner bears the burden of proof. Rule 142(a); <u>Alt v. Commissioner</u>, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

Generally, spouses filing joint Federal income tax returns are jointly and severally liable for the taxes due thereon. Sec. 6013(d)(3). Under certain circumstances, however, section 6015 provides relief from this general rule.[2] Section 6015 applies to any liability for tax arising after July 22, 1998, and to any liability for tax arising on or before July 22, 1998, but remaining unpaid as of such date. Internal Revenue Service

---

[2]Sec. 6015 was enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201, 112 Stat. 734. Prior to the enactment of sec. 6015, relief from the imposition of joint and several liability for spouses filing joint returns was available under sec. 6013(e).

Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(g), 112 Stat. 740.

Section 6015 provides three avenues for relief to a taxpayer who has filed a joint return: (1) Section 6015(b) allows relief for understatements of tax attributable to certain erroneous items on the return; (2) section 6015(c) provides relief for a portion of an understatement of tax for taxpayers who are separated or divorced; and (3) section 6015(f) more broadly confers on the Secretary discretion to grant equitable relief for taxpayers who otherwise do not qualify under section 6015(b) or (c).

The first avenue for relief is section 6015(b). Under section 6015(b), the Court may grant a taxpayer full or apportioned relief from joint and several liability for an understatement of tax on a joint return if, among other requirements,[3] the taxpayer establishes that he "did not know, and had no reason to know" that the other spouse understated that spouse's tax liability on the return. Sec. 6015(b)(1)(C), (b)(2).

Intervenor had a Merrill Lynch Account with Chevron but transferred the balance into a separate IRA when he left Chevron.

---

[3]Neither respondent nor intervenor dispute that, in this case, the requirements of subparagraphs (A), (B), and (E) of sec. 6015(b)(1) have been satisfied. The dispute is whether petitioner meets the requirements of subparagraphs (C) and (D) of sec. 6015(b)(1).

Intervenor testified that he made several withdrawals from this IRA throughout the year at issue. He used these withdrawals for various purchases, including remodeling the home where he and petitioner resided. The home had been acquired by petitioner prior to her marriage with intervenor, and both wanted to "make some changes and make it our own". Intervenor also testified he used part of one withdrawal for a downpayment on a car for petitioner and gave a few cash gifts to his individual children totaling approximately $3,000. He also paid some of their bills. Intervenor further testified that petitioner knew of the withdrawals because they discussed them together and he deposited the money into their joint bank account whenever he made a new withdrawal. Records from petitioner and intervenor's joint bank account show several, almost weekly, deposits ranging from $70 to $1,500 throughout the year in question.

Finally, at trial, petitioner admitted she was aware of at least some of intervenor's IRA withdrawals. When asked at trial if she was aware of where intervenor deposited the money he withdrew from his IRA, petitioner stated: "He put some money in our checking account for remodeling our home and things like that * * * I was aware of that part". In fact, petitioner's testimony establishes knowledge on her part that intervenor was withdrawing money from his IRA regularly, acknowledging "I just assumed [the money] came from Merrill Lynch". Her testimony leads the Court

to believe that her reasoning for requesting relief was solely because intervenor would sometimes withdraw money from his IRA and give it directly to his individual children without consulting her or informing petitioner.

Although petitioner may not have known the exact amount intervenor withdrew from his IRA during the year at issue, she readily admitted she knew that withdrawals were made and deposited into their joint bank account.  Petitioner and intervenor testified that their 2001 Federal income tax return was prepared by a commercial tax preparation service, H&R Block.  Both parties signed the return; therefore, petitioner had reason to know that the return she signed contained a substantial understatement.  Thus, petitioner is not entitled to relief under section 6015(b).

The second avenue for relief is section 6015(c).  Section 6015(c) affords proportionate relief to the requesting spouse through allocation to the responsible party.  Generally, this avenue of relief allows a spouse to elect to be treated as if a separate return had been filed.  Rowe v. Commissioner, T.C. Memo. 2001-325.  To be eligible for relief under section 6015(c), the requesting spouse must no longer be married to, or must be legally separated from, the individual with whom the tax return was filed and must have elected the applicability of section 6015(c) not later than 2 years after the date on which collection

activity began.  Sec. 6015(c)(3).  Furthermore, relief under section 6015(c) is not available to a taxpayer if it is shown that the taxpayer had actual knowledge when signing the return of any "item" giving rise to a deficiency.  Sec. 6015(c)(3)(C).

As previously discussed, petitioner is divorced from intervenor, and the divorce was finalized before she requested relief from joint and several liability.  Also, she filed a timely Form 8857 to request relief.  Therefore, the remaining requirement petitioner is required to meet to be eligible for relief under section 6015(c) is to prove she had no actual knowledge of the income item leading to the underpayment.

The Court has held that petitioner not only had reason to know of the understatement, but also she had actual knowledge of at least part of the "item", intervenor's early IRA withdrawals, giving rise to the understatement.  Because petitioner had actual knowledge of intervenor's IRA withdrawals, she is precluded from claiming relief under section 6015(c).

Because petitioner is not eligible for relief under section 6015(b) and (c), she falls under the equitable relief provision of section 6015(f).  Section 6015(f) provides, in part, that a taxpayer may be relieved from joint and several liability if it is determined that, taking into account all the facts and circumstances, it is inequitable to hold the taxpayer liable for the unpaid tax, and relief is not available under section 6015(b)

or (c).  To prevail, petitioner must prove that respondent's denial of equitable relief from joint liability under section 6015(f) was an abuse of discretion.  <u>Jonson v. Commissioner</u>, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003); <u>Cheshire v. Commissioner</u>, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002); <u>Butler v. Commissioner</u>, 114 T.C. 276, 291-292 (2000).

Section 6015(f) provides:

> SEC. 6015(f). Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
>
> (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

As directed by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying Rev. Proc. 2000-15, 2000-1 C.B. 447, that are to be used in determining whether it is inequitable to hold a requesting spouse liable for all or part of the liability for any unpaid tax or deficiency.[4]  The requesting spouse must satisfy

---

[4]Rev. Proc. 2000-15, 2000-1 C.B. 447, was superseded by Rev. Proc. 2003-61, 2003-2 C.B. 296, and is effective as to requests for relief filed on or after Nov. 1, 2003, and also is effective

(continued...)

seven conditions (threshold conditions) before the Commissioner will consider a request for relief under section 6015(f).  Rev. Proc. 2003-61, supra.  Respondent agrees that petitioner has satisfied those threshold conditions.

Where, as here, the requesting spouse satisfies the threshold conditions, Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298,[5] lists factors to be considered in determining whether to grant equitable relief.  Therefore, the Court considers the factors in Rev. Proc. 2003-61, sec. 4.03(2)(a) and (b), in determining whether respondent abused his discretion in denying equitable relief under section 6015(f).

In this case, petitioner satisfies only one of the factors listed in the revenue procedure.  Petitioner divorced intervenor in 2003; therefore, she satisfies the first factor. With respect to the second factor, petitioner must show that she would be unable to pay basic reasonable living expenses if relief were not granted.  Monsour v. Commissioner, T.C. Memo. 2004-190.  Being unable to pay basic reasonable living expenses would amount to economic hardship.  Sec. 301.6343-1(b)(4)(i), Proced. & Admin.

---

[4](...continued)
for requests for relief pending on Nov. 1, 2003, as to which no preliminary determination letter had been issued as of that date. Petitioner's application for relief was filed after Nov. 1, 2003, on Feb. 3, 2004.

[5]The Court need not consider Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, since that section relates to "underpayments".

Regs.  Petitioner has not alleged that denial of her request for relief would result in economic hardship.  She is gainfully employed and has no dependents to support.  The Court fails to see, and petitioner has not established, that she would suffer economic hardship if her request for relief from joint liability were denied.

As to the third factor, as discussed earlier, petitioner had actual knowledge that intervenor was making early IRA withdrawals.  Therefore, petitioner knew when she signed her joint return for the year at issue that there was an understatement of tax since these withdrawals were not included as income.  Rev. Proc. 2003-61, specifically states that actual knowledge by the requesting spouse of the item giving rise to the deficiency is a strong factor weighing against relief.  This strong factor may only be overcome if the factors in favor of equitable relief are particularly compelling.

The fourth and sixth factors are neutral.  There was no legal obligation on either party to pay for the liability for the year at issue, and there is no evidence that petitioner either failed to comply with or fully complied with tax obligations.[6]

---

[6]In determining whether petitioner complied or failed to comply with tax obligations, the Court notes that petitioner did not allege she suffered any abuse, mental or physical, from intervenor.  In addition, petitioner presented no evidence that she was in poor mental or physical health either when she signed the return or when she filed her request for relief.

Petitioner also fails to satisfy the fifth factor because, although the early IRA withdrawals from which the liability arises are directly attributable to intervenor, petitioner received a significant benefit from the items giving rise to the deficiency. This benefit goes beyond that of normal support. At least a portion of the money intervenor withdrew from his IRA was deposited into their joint bank account. Although intervenor testified that he used at least $3,000 of the money he withdrew to assist his son with purchasing a home, he also testified that part of the money was used to remodel his and petitioner's home. Also, intervenor withdrew $5,000 from his IRA for a downpayment on a new car for petitioner.

The failure of petitioner to satisfy all but one of the factors in Rev. Proc. 2003-61, is determinative. On these facts and circumstances, the Court holds that there was no abuse of discretion by respondent in denying relief to petitioner under section 6015(f). The Court, therefore, sustains that denial.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>for respondent.</u>