T.C. Summary Opinion 2007-42

UNITED STATES TAX COURT

CONNIE J. MEADOWS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 874-06S.                    Filed March 15, 2007.

Connie J. Meadows, pro se.

<u>Thomas L. Fenner</u>, for respondent.

JACOBS, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
at the time the petition was filed.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the year in issue.  Pursuant to section 7463(b), the

decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

This case involves innocent spouse relief for the amount of tax shown as due on petitioner and her then husband's joint 1999 income tax return that has not been fully paid. Petitioner contends that respondent's allowance of only partial innocent spouse relief was an abuse of discretion. Consequently, we must decide whether respondent abused his discretion in denying petitioner innocent spouse relief under section 6015(f) for $1,815 of the $7,100 shown as the amount owed on the 1999 return.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing the petition, petitioner resided in Houston, Texas.

Petitioner and her husband at that time, Todd Meadows, timely filed a joint Form 1040, U.S. Individual Income Tax Return, for 1999. They reported Mr. Meadows's wage income of $51,825.97 and petitioner's wage income of $39,455.81, together with other income items such as a taxable distribution from a pension plan, interest income, and dividend income. Their total income for 1999 was shown as $107,208. The total tax shown was $20,395, with $7,100 owed (including a $256 estimated tax penalty).

Petitioner was and is a middle school teacher. Mr. Meadows was a property tax specialist employed by an energy company. In March of 2001 petitioner and Mr. Meadows divorced. In June of 2001, respondent determined a deficiency of $5,464 in petitioner and Mr. Meadows's income tax for 1999 and issued a notice of deficiency for a deficiency and a related penalty under section 6662(a). Neither petitioner nor Mr. Meadows petitioned this Court for a review of respondent's determination, and respondent assessed the deficiency and the related penalty.

In August of 2004, petitioner requested innocent spouse relief for the 1999 tax year pursuant to section 6015(c). Respondent granted petitioner full relief with respect to the deficiency in, and addition to, tax that had been assessed. However, respondent denied relief under section 6015(f) for $1,815 of the unpaid liability shown on the joint 1999 tax return. Respondent asserts that he is seeking recovery only of that part of the tax liability shown on the joint return that is attributable to the earnings of petitioner.

Respondent issued a final notice of determination with respect to petitioner's request for innocent spouse relief under section 6015 in November 2005.

## Discussion

Married couples may choose to file their Federal income tax returns jointly. Sec. 6013(a). Couples filing joint returns are

jointly and severally liable for the taxes due thereon.  Sec.
6013(d)(3).  Section 6015 provides relief from liability for
filers of joint returns in some circumstances.  Under section
6015(b), a spouse may seek relief for understatements of tax
attributable to certain erroneous items on a return.  Under
section 6015(c), the tax liability may be apportioned between two
former or separated spouses.  These provisions apply when there is
a deficiency in tax.  Petitioner was successful in obtaining
relief under section 6015(c) for the deficiency respondent
determined.

In cases of underpayment, section 6015(f) applies.  Section
6015(f) provides, in part, that a taxpayer may be relieved from
joint and several liability if it is determined that, taking into
account all the facts and circumstances, it is inequitable to hold
the taxpayer liable for the unpaid tax, and relief is not
available under section 6015(b) or (c).  If relief is denied, then
to prevail the taxpayer must prove that the Commissioner's denial
of equitable relief from joint liability under section 6015(f) was
an abuse of discretion.  Butler v. Commissioner, 114 T.C. 276,
287-292 (2000).  The Court defers to the Commissioner's
determination unless it is arbitrary, capricious, or without sound
basis in fact.  Jonson v. Commissioner, 118 T.C. 106, 125 (2002),
affd. 353 F.3d 1181 (10th Cir. 2003).  Whether the Commissioner's
determination was an abuse of discretion is a question of fact.

The requesting spouse bears the burden of proving that there was an abuse of discretion.  Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002); Abelein v. Commissioner, T.C. Memo. 2004-274.

As directed by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying Rev. Proc. 2000-15, 2000-1 C.B. 447, that are to be used in determining whether it is inequitable to hold a requesting spouse liable for all or part of the liability for any unpaid tax or deficiency.  Respondent, in denying relief to petitioner, applied guidelines found in Rev. Proc. 2000-15, supra, which we will refer to as the superseded guidelines.  The superseded guidelines were modified by guidelines found in Rev. Proc. 2003-61, supra, which we will refer to as the applicable guidelines. The applicable guidelines are effective as to requests for relief filed on or after November 1, 2003, and for requests for relief pending on November 1, 2003, as to which no preliminary determination letter had been issued as of that date.  Rev. Proc. 2003-61, sec. 7, 2003-2 C.B. at 299.  Petitioner's application for relief was filed after November 1, 2003, on August 5, 2004. Respondent's determination letter was issued on November 10, 2005.

According to section 4.01 in both sets of guidelines, the requesting spouse must satisfy seven conditions (threshold conditions) before the Commissioner will consider a request for

relief under section 6015(f).  Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297; Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448.  The threshold conditions in the modified guidelines, however, are different from the threshold conditions in the superseded guidelines.  The modified guidelines contain a threshold requirement that the income tax liability from which the requesting spouse seeks relief be attributable to an item of the individual with whom the requesting spouse filed the joint return (with exceptions not applicable here).  Respondent, at trial and in his pretrial memorandum, stated that petitioner satisfied the threshold conditions, but when respondent made this concession, he was referring to the threshold conditions found in the superseded guidelines, which did not include the threshold requirement pertaining to attribution.[1]

Respondent contends that he is seeking to recover only that portion of the 1999 tax liability that is attributable to the earnings of petitioner.  Petitioner does not dispute that claim.  Consequently, pursuant to the applicable guidelines, innocent spouse relief would be denied, because petitioner does not meet

---

[1]This factor, attribution of the item generating the income tax liability, appears in sec. 4.03 of the superseded guidelines, rather than as a threshold requirement of sec. 4.01 of those guidelines.  Therefore, respondent considered this factor in denying petitioner's request for innocent spouse relief but did not regard it as a threshold condition.

the threshold condition that the tax liability be attributable to an item of the nonrequesting spouse.

Although petitioner has not met the threshold requirements for relief found in section 4.01 of the applicable guidelines, we consider other factors to be taken into consideration when the threshold requirements are met, because respondent, applying the superseded guidelines, conceded that petitioner had met the threshold conditions and denied petitioner's claim for innocent spouse relief on other bases.

The applicable guidelines specify, in section 4.02, three other conditions (assuming that the threshold conditions were met, which respondent erroneously assumed was the case) that, if met, will normally entitle the spouse to relief.  Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298.  To qualify, petitioner must show that:  (a) She is no longer married; (b) it was reasonable for her to believe that Mr. Meadows would pay the reported tax liability; and (c) she will suffer economic hardship if she is not granted innocent spouse relief.  Economic hardship generally means that the individual is unable to pay reasonable basic living expenses.[2]

Petitioner showed that she and Mr. Meadows are divorced, thereby satisfying the first condition.  However, we cannot find

---

[2]See sec. 301.6343-1(b)(4), Proced. & Admin. Regs., referred to in the revenue procedure in making the determination of whether economic hardship is present.

that petitioner reasonably believed that Mr. Meadows would pay the tax liability reported on the 1999 joint return.

It appears from the record that petitioner filed tax returns for at least the preceding 3 years as a married taxpayer filing separately. Petitioner testified that Mr. Meadows prepared those returns for her and that she merely signed them. On one occasion, Mr. Meadows signed her name to the return. Petitioner testified that Mr. Meadows convinced her that it would be advantageous to them to file a joint return for 1999, even though at the time the return was due they were contemplating divorce. Petitioner asserts that at Mr. Meadows's request, she signed the joint 1999 return while it was blank; i.e., before any figures appeared on it. Petitioner testified that in doing this, she "should have known better than to trust" Mr. Meadows. According to petitioner, Mr. Meadows then filed the return, which showed the tax liability and the balance still owed. The address on the tax return was a mailbox to which Mr. Meadows had access but petitioner did not. Consequently, petitioner testified that she was unaware of any further developments or correspondence from respondent pertaining to the 1999 tax year and did not obtain a copy of the joint return until respondent began collection efforts.

Petitioner could not reasonably have believed that Mr. Meadows would pay the reported tax liability because petitioner was unaware they had any tax liability, having signed a blank

return.  Petitioner testified that even though Mr. Meadows assured her that he would properly manage their tax obligations, she was aware that she could not trust him to actually do so.  Moreover, petitioner testified that Mr. Meadows had always prepared and filed her tax returns, both the joint and separate returns, and that several years before 1999, respondent had garnished her wages.

Nothing in petitioner's testimony establishes that petitioner believed that Mr. Meadows would pay the reported tax liability.  Even if we could find (which we do not) that petitioner believed that Mr. Meadows would pay the reported tax liability, we could not find that her belief was reasonable.  On the contrary, petitioner's experience in relying on Mr. Meadows to pay income taxes had resulted in the garnishing of her wages.

Further, we do not find that petitioner will suffer economic hardship if she is not granted innocent spouse relief.  The record shows that petitioner earned more than $46,000 in 2005.  The unpaid tax that respondent seeks to recover, including interest as of the date of trial, is approximately $2,300.  Petitioner did not provide any supporting documentation, but she testified that she contributes to the support of her young adult children and her elderly parents.  Even if we were persuaded that petitioner's living expenses include the cost of supporting adult children and elderly parents, these costs were not quantified, and we cannot

conclude from this record that petitioner will not be able to pay her reasonable basic living expenses if she is not granted relief.

In sum, assuming petitioner met the threshold requirements found in section 4.01 of the modified guidelines, we conclude petitioner does not qualify for relief because she did not meet the additional requirements found in section 4.02 of the modified guidelines.

Where the requesting spouse meets the seven threshold conditions set forth in section 4.01 of the modified guidelines, but does not qualify for relief under section 4.02 of those guidelines, we employ a balancing test to determine whether, taking into account all the facts and circumstances, it would nevertheless be inequitable to hold the requesting spouse liable for all or part of the unpaid liability. Section 4.03 of the modified guidelines enumerates six nonexclusive factors that may be considered in making this determination.

Because respondent applied the superseded guidelines, he considered petitioner's request for relief in the light of eight factors listed in section 4.03 of the superseded guidelines. We now examine section 4.03 of the modified guidelines, which

includes six factors to be considered.  A description of each factor, underscored, and our evaluation of that factor in this case, follows.[3]

(a) <u>Marital status.  The requesting spouse is separated or divorced from the nonrequesting spouse</u>.  Petitioner has shown that she is divorced from Mr. Meadows.  This factor weighs in her favor.

(b) <u>Economic hardship.  The requesting spouse will suffer economic hardship if relief from the liability is not granted</u>.  For reasons explained <u>supra</u>, we do not find that petitioner would suffer economic hardship if relief were not granted.  This factor weighs against her.

(c) <u>Knowledge or reason to know.  In the case of an income tax liability that was properly reported but not paid, whether the requesting spouse did not know and had no reason to know that the nonrequesting spouse would not pay the income tax liability</u>.  We are unable to determine petitioner's actual knowledge as to whether her husband would pay the tax shown on their joint return for 1999.  Indeed, because she signed the return in blank, we are

---

[3]In addition to these six factors, the superseded guidelines included as a factor in sec. 4.03 whether the income tax liability was attributable to an item of the nonrequesting spouse.  As explained <u>supra</u> note 1, this factor is a threshold requirement found in sec. 4.01 of the modified guidelines.  In addition, the superseded guidelines included spousal abuse as a factor to be considered in sec. 4.03.  That factor is part of the threshold considerations of sec. 4.01 in the modified guidelines; the parties agree that there was no such abuse in this case.

unable to say whether petitioner knew that any tax was due. However, if petitioner was aware that any tax was due, on the basis of past experience she would have had reason to believe that her husband might not pay the tax liability. It is also true that the address shown on the return was a business mailbox to which petitioner did not have access, so that she was not aware of any correspondence between respondent and Mr. Meadows after the filing of the return. This factor weighs neither in favor of nor against petitioner.

(d) Nonrequesting spouse's legal obligation. Whether the nonrequesting spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement. This factor will not weigh in favor of relief if the requesting spouse knew or had reason to know, when entering into the divorce decree or agreement, that the nonrequesting spouse would not pay the income tax liability. Petitioner's divorce decree assigns responsibility for all Federal income tax liability from the date of marriage through December 31, 2001, to Mr. Meadows. We are unable to determine petitioner's actual knowledge, at the time of the decree, as to whether Mr. Meadows would pay the income tax liability. On the basis of past experience, petitioner had reason to believe that her husband would not pay the income tax liability. This factor weighs neither in favor of nor against petitioner.

(e) Significant benefit.  Whether the requesting spouse received significant benefit (beyond normal support) from the unpaid income tax liability.  Petitioner credibly testified that she received no gifts or other benefits from the unpaid tax liability.  Mr. Meadows did not honor his child support obligations under the divorce decree and at one point simply remained out of touch with his family for 2 years.  This factor weighs in favor of petitioner.

(f) Compliance with income tax laws.  Whether the requesting spouse has made a good faith effort to comply with income tax laws in the taxable years following the taxable year to which the request for relief relates.  Petitioner filed a tax return for the 2000 tax year, but did not file tax returns for any subsequent years.  Petitioner testified that the reason for her failure to file was that she believed she was owed a tax refund with respect to the 2000 tax year which, according to her accountant, would have been jeopardized by subsequent filings that might have shown tax due.  In other words, petitioner admitted that she might owe taxes for years after 2000, as she had owed taxes for some years before 1999, and that the Government might offset her claimed refund for the 2000 tax year against taxes owed for subsequent tax years.[4]

---

[4]We note that petitioner's youngest child, for whom she claimed the child tax credit in 1999, attained the age of 17 in
(continued...)

Petitioner testified that she relied on her accountant, who is a certified public accountant. Petitioner further testified that she provided her accountant with the necessary information for him to prepare returns and that she believed her accountant had requested extensions of the time to file. We are not satisfied that petitioner's actions amounted to a good faith effort to comply with income tax laws. Even giving petitioner the benefit of the doubt that she relied on, or more likely misunderstood, her accountant's advice, petitioner was certainly aware of the obligation to file income tax returns, which she did for 2000, the tax year for which she believed she was entitled to a refund. Her understanding (or, more likely, misunderstanding) of her accountant's advice with respect to later years amounts to an endorsement of a strategy of preventing the Government from applying the refund she expected with respect to the 2000 tax year to a tax that she might owe in later years. This does not constitute a good faith effort to comply with income tax laws. Consequently, this factor weighs against petitioner.

Not all the factors in section 4.03 of the modified guidelines weigh against petitioner, just as not all of the factors in section 4.01 or 4.02 of the modified guidelines weigh against her. However, because we find that: Respondent is

---

[4](...continued)
2001; petitioner was therefore not entitled to this tax credit for years after 2000.

seeking to collect the portion of the 1999 income tax that is attributable to petitioner; petitioner did not in good faith believe that Mr. Meadows would pay the income tax owed; petitioner has not shown that she would suffer economic hardship if relief were not granted; and petitioner did not make a good faith effort to comply with income tax laws in subsequent years, we conclude that respondent did not abuse his discretion in denying innocent spouse relief to petitioner under section 6015(f).

To reflect the foregoing,

Decision will be entered for respondent.